[Kyser v. Hertzler.]

# Kyser *v.* Hertzler.

## *Bill to Abate Private Nuisance.*

(Decided June 11, 1914. 65 South. 967.)

1. *Nuisance; Private; What Constitutes.*—Although a private stable per se is not a nuisance, it may become so by reason of the manner in which it is constructed, kept or used, or by reason of the location being improper or necessarily injurious to a neighbor.

2. *Same.*—A private stable emitting offensive odors, located about thirty feet from the front of plaintiff's residence, is a private nuisance which equity will abate.

3. *Same; Abatement and Jurisdiction.*—Section 718, Code 1907, confers a concurrent and cumulative, but not an adequate remedy, and does not affect the original jurisdiction of equity to abate nuisance.

4. *Evidence; Judicial Knowledge.*—The courts will not take judicial notice that the offensive odors emitted from a stable contain ammonia, and are "supposed to be more or less healthful."

5. *Injunction; Temporary; Dissolution.*—Under section 4353, Code 1907, the rule is modified, and an injunction will not be dissolved necessarily merely because the answer denies the material averments of the bill.

6. *Same.*—The fact that a nuisance was dissolved in obedience to a temporary injunction should not be considered on a motion to dissolve such injunction.

APPEAL from Madison Law and Equity Court.

Heard before Hon. J. H. BALLENTINE.

Bill by Frank Hertzler against J. A. Kyser to enjoin the maintenance of a private nuisance. From an order overruling the motion to dissolve a temporary injunction, respondents appeals. Affirmed.

BETTS & BETTS and LANIER & PRIDE, for appellant. The bill was without equity and the injunction was improperly issued.—*St. James Church v. Arrington*, 36 Ala. 548. Attention is called to the health officer's affidavit, and to the case of *Gallagher v. Floury*, 57 Atl. 672. The temporary injunction should be dissolved on

the sworn denials of the answer.—*Turner v. Stevens,* 106 Ala. 548; 22 Cyc. 40. An injunction will not be maintained when it is manifest that it is usless, and the grounds on which it is granted no longer exist.—*Steiner v. Scholze,* 105 Ala. 687; 10 A. & E. Enc. of Law, 786. An adequate remedy at law exists before a quasi judicial tribunal.—§ 718, Code 1907, as amended Acts 1911, p. 118; 22 Cyc. 776.

Z. I. DRAKE and C. P. GRIMMETT, for appellee. No brief reached the reporter.

GARDNER, J.—The bill in this case was filed by the appellee against the appellant to abate a private nuisance. Temporary injunction having issued in accordance with the prayer of the bill, motion was made to dissolve the same, which was overruled by the chancellor (the judge of the law and equity court), and, from this decree, the appeal is taken.

The bill alleges that the respondent has under his control and management, and does maintain a stable in Madison, Ala., where he keeps horses, and that the stable is in unsanitary condition, offensive, and prejudicial to the health of complainant's family. We quote the remaining portion of the second paragraph of the bill as follows: "That said stable or barn is in close proximity to complainant's residence, and that the odor arising from said barn or stable is so offensive that complainant is deprived of the proper use of the free enjoyment of his home; that the said stable or barn is within about 30 feet of complainant's front porch, and the odor arising from said stable or barn is such that your complainant is deprived of the use of the free enjoyment of his front porch and sitting room, and that many times your complainant is compelled to close the windows next to

said stable in order that the fumes arising from said stable may be kept from entering your complainant's house."

The third paragraph alleges that the said premises as maintained by respondent have been condemned by Dr. T. E. Dryer, health officer of the town of Madison, as a nuisance, and that his acts therein have been approved by the Madison county board of health.

The answer denies the material averments of the bill, except as to the location of the said stable with reference to complainant's dwelling. Respondent also avers that the stable had been there for 20 years, and has been used practically continuously for such period of time, and was there when complainant's house was built; that the use of the stable is a great convenience to respondent as he is a practicing physician, etc.

The stable was maintained by the respondent upon rented premises.

Affidavits were introduced on the hearing of the motion by both parties. We need not here consider these separately. To each we have given careful consideration. The following portion of the affidavit of complainant we find to be practically without contradiction: "I own a home in which I now live with my family in Madison, Ala., and is the house referred to in my original bill of complaint, and I have lived in said house for more than eight years, and that the barn complained of in said original bill is situated about 30 feet, a little southeast of the front of my dwelling, and the end of said barn in which horses have been kept is next to my house, and has been used for such purposes since early spring of this year."

The house of complainant faces south, and this stable, it is stated, is almost in front of the dwelling, being a little east of south thereof.

Affidavits offered by complainant tend to show there have been no horses kept in the barn during the *summer* months during the last eight years, while those offered for respondent tend to show that horses have been kept in the barn during this time, yet they are not specific in denial of those of complainant, averring that horses were not kept there during the warm season of the year, nor as to the number of horses so kept there, and for what continuous length of time.

Affidavits for complainant tend to show that the odor from the stable was of such an offensive nature that he was to a great extent deprived of the use of his front porch, and was frequently compelled to close also the windows of the sitting room of his house. It is further shown that complainant procured the use of another stable for respondent, without charge, but that such was not availed of by the latter.

It is recognized as the rule that a private stable is not per se a nuisance.—*St. James Church v. Arrington*, 36 Ala. 546, 76 Am. Dec. 332; 29 Cyc. 1181. It is also well understood, however, that: It may "become a nuisance by reason of the manner in which it is constructed, kept, or used, or by reason of the location being improper or necessarily injurious to a neighbor."—29 Cyc. 1182, and authorities there cited.

"The law may be regarded as settled that where a business, although lawful in itself, becomes obnoxious to neighboring dwellings and renders their enjoyment uncomfortable whether by smoke, cinders, noise, offensive odors, noxious gases, or otherwise the carrying on of such business is a nuisance which equity will restrain. Nor is it necessary that the nuisance be injurious to health to warrant the interference."—1 High on Inj. § 772.

In *Grady v. Wolsner*, 46 Ala .381, 7 Am. Rep. 593, it was said: "Anything constructed on a person's premises which, of itself, or by its intended use, directly injuries a neighbor in the proper use and enjoyment of his property is a nuisance."

The following from Wood on Nuisances (volume 2, § 597) is also in point: "Not only may a livery stable become a nuisance by improper location and offensive or annoying results, but it is held that *any* private stable or barn may be so located with reference to the dwellings or places of business of others, and be so improperly kept and conducted, as to become an actionable nuisance. Even in the ordinary use of property, in its use for purposes that are regarded as incident thereto, a person is bound to prevent such use from becoming a nuisance to others if possible. A man has no right to erect a barn for the keeping of horses and cattle so near to his neighbor's dwelling as to disturb the rest of those residing there by the noises produced by the animals kept there at night, or to manage it in such a way as to permit offensive stenches to emanate therefrom and float over his neighbor's premises, to his serious annoyance and discomfort."

While ordinarily it is, of course, recognized that a man may do an act on his own place that is not unlawful, yet he is not permitted to use his own property to the injury of another. As quoted in the case of *Hundley v. Harrison*, 123 Ala. 297, 26 South. 294: "When he sends onto the lands of his neighbor noxious smells, smoke, etc., then he is not doing an act on his own property, only, but he is doing an act on his neighbor's property also, because every man has a right, by the common law, to the pure air, and to have no noxious smells sent on his lands, unless by a period of time a man has,

by what is called prescriptive right, obtained the pow er of throwing a burden on his neighbor's property."

We have statutory definitions of *nuisance,* as in section 5193, Code of 1907, wherein it is said: "A nuisance is anything that worketh hurt, inconvenience, or damage to another; and the fact that the act done may otherwise be lawful does not keep it from being a nuisance."

And again, as in section 5198, as follows:

"A private nuisance may injure either the person or property, or both, and in either case a right of action accrues."

Speaking to the right of the owner of land to the flow of pure air, this court, in *Romano v. Birmingham Railway, Light & Power Co.,* 182 Ala. 335, 62 South. 677, 46 L. R. A. (N. S.) 642, said: "The right is incident to the ownership of land, and must be protected as well as any other valuable right. 'No man has a right to interfere with the supply of pure air that flows over another's land any more than he has to interfere with the soil itself.' "

The following cases from other states involved the like question of a stable, and are of interest in this connection. We therefore cite them: *Rounsaville v. Kohlheim,* 68 Ga. 668, 45 Am. Rep. 505; *Dargan v. Waddill,* 31 N. C. 244, 49 Am. Dec. 421; *Gifford v. Hulett,* 62 Vt. 342, 19 Atl. 230; *Burditt v. Swenson,* 17 Tex. 489, 67 Am. Dec. 665.

In this latter case the opinion makes use of the following language of Mr. Blackstone: "And by consequence it follows that if one does any other act, in itself lawful, which being done, in that place, necessarily tends to the damage of another's property, it is a nuisance, for it is incumbent on him to find some other place to do that act where it will be less offensive. So

closely does the law of England enforce that excellent rule of gospel morality, of doing to others as we would they should do unto ourselves."

We are cited by counsel to *St. James Church v. Arrington, supra* and to *Gallagher v. Flury,* 99 Md. 181, 57 Atl. 672. In each of these cases it was sought to enjoin the *erection* of a stable, and there was therefore involved the question of an *anticipated* nuisance, and the decisions are not therefore authorities in the instant case. The authorities herein cited, and from which we have quoted, demonstrate clearly, in our opinion, the equity of the bill.

We are also reasonably satisfied from the affidavits introduced that offensive odors from the barn in which the horses were kept, situated, as it was, in front of the dwelling of the complainant, and within 30 feet thereof, created much inconvenience and discomfort to complainant and his family, and deprived them of a free enjoyment of their home. We are reasonably satisfied of the existence of such odors at the time of the filing of the bill, and that under all the circumstances the chancellor was justified in his conclusion that the stable, used as it was, and located as it was, created a private nuisance which a court of equity will abate.

We are further reasonably satisfied from what we have before us that the stable had not, for any great length of time, been *used* in such a manner as to become a private nuisance to this complainant, and was not such at the time the complainant's house was constructed. Any question, therefore, as to the length of time the stable building or barn has itself been located as it now is can have no bearing on the result here, and there is no field of operation for any principle growing out of such (1 Wood on Nuisances, § 704 et seq.), nor does it become necessary to consider principles applicable

to those cases where complainant "came to the nuisance," to use the expression in the books (Wood on Nuisances, supra, §§ 574, 576, et seq.; 29 Cyc. p. 1193).

Counsel for appellant argue in brief that it is a matter of common knowledge that the odors and gases from such a place contain ammonia, and "are supposed to be more or less healthful." As to this we find it unnecessary to affirm or deny. We pass it by, just as we would the stables. We feel, however, that we are on entirely safe ground in saying that common observation does *not* teach that invalids, the weak and the afflicted, are advised by their physicians to seek close proximity to such places in the hope of restoration to health and strength. But this is a digression, which, however, we hope is pardonable.

Returning to the more serious vein: It is insisted in brief that, the answer denying the material averments of the bill, the injunction should be dissolved.—*Turner v. Stephens,* 106 Ala. 458, 17 South. 706. The rule, as there announced was not inflexible; but our statute (section 4535 of the Code of 1907) which now permits the introduction of affidavits in all such cases has materially modified the rule.

As it was the *use* of the stable as such—the keeping therein of the horses—that was productive of the nuisance here complained of, it may be doubted whether the provisions of section 718 of the Code constitute any adequate relief. Clearly not so adequate a relief as may be awarded in a court of equity, and as the abatement of a private nuisance is a jurisdiction of the chancery court, which is now well established, and there is nothing in the above section indicating an abridgment of that jurisdiction, we are of the opinion that such provi-

sions can. have no bearing on the result of this suit.—
*Evans v. Withite,* 167 Ala. 587, 52 South. 845; *Todd v.
Leslie,* 171 Ala. 624, 55 South. 174.

We also think it equally as clear that the fact that
the stable, after issuance of the temporary writ, is now
not offensive, and after, in other words, the nuisance
has been abated in obedience to the mandate of the
court, gives no support to the motion to dissolve.

What is said in the case of *Steiner v. Scholze,* 105 Ala.
607, 18 South. 79, and 2 High on Inj. § 145, cited in
brief, is not applicable to the character of case here un-
der review.

We have not herein commented separately upon each
affidavit and given in detail our reasons for the conclu-
sion we have reached. We have, however, given each af-
fidavit careful consideration, and in the light of the evi-
dence before us, as to the location of this stable in such
nearness to the front of the home of complainant, and
as to the discomfort and inconvenience, which resulted
from the odors arising therefrom, we are of the opinion
that the chancellor was justified in overruling the mo-
iton, and so, enforcing what was denominated by Mr.
Blackstone, "that excellent rule of gospel morality, of
doing to others as we would they should do unto our-
selves."

Of course we have not the case here upon final de-
cree, and as to whether or not it is possible that the sta-
ble, located where it is in reference to the home of com-
plainant, can in any event be continued in use as be-
fore, in an unobjectionable manner, we are not now
concerned. The proper practice as to this, however, is
pointed out in the case of *Romano v. Birmingham Rail-
way, Light & Power Co., supra,* citing Wood on Nui-
sances, § 823.

[De Soto Coal, Mining & Development Co. v. Hill, et al.]

We conclude that the chancellor properly decreed in overruling the motion, and his decree is therefore affirmed.

Affirmed.

ANDERSON, C. J., and MAYFIELD and SOMERVILLE, JJ., concur.