60 So.2d 438

## DUNCAN v. CITY OF TUSCALOOSA.

### 6 Div. 371.

Supreme Court of Alabama.

Aug. 27, 1952.

McQueen & McQueen and Jas. E. Morrisette, Tuscaloosa, for appellant.

S. H. Sprott and E. D. McDuffie, Tuscaloosa, for appellee.

STAKELY, Justice.

This is an appeal from a decree of the equity court overruling the demurrer to a bill in equity. The purpose of the bill is to abate an alleged nuisance. The allegations of the bill substantially show the following.

The City of Tuscaloosa, the complainant, is a municipal corporation. Richard B. Duncan, the respondent, is engaged in the business of buying chickens by the thousands when very young and raising them for sale on a lot in the City of Tuscaloosa fronting about 81 feet on the west side of Thirty-Second Avenue and located about 230 feet from the north margin of Fifth Street. The respondent feeds and raises the chickens in two buildings referred to as "brooders". When the chickens become about 8 or 10 weeks old the respondent sells or otherwise disposes of them. When he disposes of one quantity of chickens he promptly obtains an additional number of small chickens and repeats the process. Each brooder is about 145 feet long and 32 feet wide and has a capacity of about 5,000 chickens. For weeks at a time respondent will have from eight to ten thousand chickens in the two brooders. The brooders have a dirt floor covered with wood shavings and are boarded up from the ground about 4 feet and above that they are enclosed with chicken wire to the roof, so that odors arising therefrom and from the chickens are open to the surrounding air and carried to the public and private premises of other persons.

Except for the chicken business which respondent has been operating since the early part of January, 1951, the block in which the aforesaid property is located is exclusively residential and has been so for a long number of years. The area of the city in which the said property is located and for many blocks therefrom is almost exclusively residential in use. This section of the city is thickly settled. There are many residences in the block in which the property is located and in the blocks east, south and west of said block and a large number of people are regularly domiciled and reside therein. The residents of this area take great pride in their homes and in desirable premises to live free from noisome, unpleasant and foul odors and nuisances of all kinds.

There arises and is given off from the brooders and from the chickens confined therein and from deodorants and other disinfectants and other chemicals used in the brooders, foul, offensive, malodorous, disagreeable and unhealthy odors, fumes and vapors which are spread or blown to premises and residences of others in the block in which the lot is located and in the nearby area to such extent and degree as to interfere materially with the comfort, health, wellbeing, convenience and human existence of the occupants of the residences in said block and adjacent area. Flies which breed in the brooders are on the aforesaid premises or are attracted thereto by the presence of the chickens and odors from the brooders. Flies infest the premises in such numbers and in such manner as to be a source of great annoyance, inconvenience and discomfort to the residents in the surrounding area and to be a source of danger to the health of said residents and to the public.

In the early part of December, 1950, the respondent made application for a building permit to construct the two aforesaid buildings on said lot to be used for keeping, feeding and housing and raising chickens for the market. When it became known to the residents in the vicinity that such application for such purpose had been made, they appeared in large numbers before the Commission Board of the City of Tusca-

loosa and protested and objected to the issuance of such building permit on the ground that the conduct of such business as proposed by the respondent would constitute a nuisance. The respondent appeared before the Commission Board and assured the Board that the business could and would be so conducted as not to be objectionable to the residents in the vicinity and would not be a nuisance. The Commission Board being of the opinion that it should not prejudge the question without giving the respondent an opportunity to find out whether or not he could conduct such business without its being a nuisance or without its being offensive to nearby residents, authorized the permit to be issued, at the same time advising the respondent that if he constructed the buildings it would be at his own risk and if the conduct of the business proved in fact to be a nuisance, the city would take legal action to abate it. The Commission Board also advised the respondent that it reserved the right to pass on any question of nuisance or anything else connected with the use of the houses in the event any such question should arise. Such notice in effect was also given to the respondent in a letter to the respondent from The Chairman of the Commission Board, a copy of the letter being attached to the bill of complaint as an exhibit and made a part thereof. Notwithstanding the foregoing, the respondent constructed the buildings and began the conduct of said business in about the month of January, 1951, and has continuously operated it since that time.

It is alleged that the City of Tuscaloosa has in force and effect a valid ordinance duly adopted and ordained by the Commission Board of Tuscaloosa on towit June 12, 1951, namely Ordinance No. 1145, entitled "An Ordinance Prohibiting Public Nuisances and Other Purposes", a copy of which ordinance is attached to the bill of complaint and made an exhibit thereto and a part thereof. In substance the ordinance provides that every person, firm or corporation who causes, creates or maintains a public nuisance shall be guilty of a misdemeanor and on conviction thereof shall be punished as provided in the ordinance. It further provides that the causing, creating

or maintaining of a public or common nuisance, as the term public nuisance or common nuisance is defined or understood according to the common law, is declared by the ordinance to be a misdemeanor. It further provides that it shall constitute a public nuisance and be unlawful for any person, firm or corporation to raise, maintain, have in possession, feed, kill or slaughter any chickens, turkeys, geese, ducks or other fowl on any premises within the City of Tuscaloosa or its police jurisdiction in such numbers or in such manner or under such conditions or circumstances or with such result as to be offensive or unwholesome or a source of injury, detriment, hurt or annoyance to the health, comfort, welfare of other person or persons occupying adjacent premises or under such conditions or circumstances or with such result that offensive odors emanate therefrom to the annoyance or discomfort of others.

The bill is attacked on the theory that it presents two aspects, each aspect failing to state a cause of action. It is claimed that the first aspect seeks to state a cause of action without aid of the ordinance adopted by the City of Tuscaloosa. Appellant takes the position that the allegations of the will in its first aspect fail to show a public nuisance within the statutory definition.

While we consider that the alleged nuisance does come within the statutory definition, as we shall show, it is well to point out that the city is authorized to maintain an equitable action for the abatement of a nuisance notwithstanding there is no statutory authority therefor, National Southern Products Corp., Inc., v. City of Tuscaloosa, 246 Ala. 316, 20 So.2d 329; Pearson v. Mayor and Aldermen of City of Birmingham, 155 Ala. 631, 47 So. 80, and the statutory definition of a nuisance to which we shall refer is but declaratory of the common law and does not supersede the common law as to the other conditions and circumstances constituting a nuisance under the common law. Milton v. Maples, 235 Ala. 446, 179 So. 519; 1st Avenue Coal & Lumber Co. v. Johnson, 171 Ala. 470, 54 So. 598, 32 L.R.A.,N.S., 522.

But as we said, we consider that the case made by the bill comes within the statutory

definition. Nuisances are defined and divided into public and private nuisances by §§ 1081 and 1084, Title 7, Code of 1940, providing, respectively, as follows:

"§ 1081. A nuisance is anything that worketh hurt, inconvenience, or damage to another; and the fact that the act done may otherwise be lawful does not keep it from being a nuisance. The inconvenience complained of must not be fanciful, or such as would affect only one of a fastidious taste, but it should be such as would affect an ordinary reasonable man.

"§ 1084. Nuisances are either public or private. A public nuisance·is one which damages all persons who come within the sphere of its operation, though it may vary in its effects on individuals. A private nuisance is one limited in its injurious effects to one or a few individuals. Generally, a public nuisance gives no right of action to any individual, but must be abated by a process instituted in the name of the state. A private nuisance gives a right of action to the person injured."

Section 1085, Title 7, Code of 1940, authorizes municipalities to maintain a bill in equity in the name of the city to abate or enjoin any public nuisance injurious to the health, morals, comfort or welfare of the community or any portion thereof. Express authority is also given to municipal corporations to abate public nuisances in §§ 505 and 506, Title 37, Code of 1940. National Southern Products Corp., Inc., v. City of Tuscaloosa, supra.

■ The respondent is operating a plant for raising chickens in a location which is exclusively residential and in such a manner that eight to ten thousand chickens are on hand within the brooders at all times under conditions described in the bill, with resultant unwholesome, obnoxious odors permeating the atmosphere of adjacent areas together with the attraction of flies, as described in the bill. As was said in National Southern Products Corp., Inc., v. City of Tuscaloosa, supra [246 Ala. 316, 20 So.2d 330]. "That the averments of the bill establish a public nuisance within the

definition of § 1084, supra, is too clear for further discussion." While the brooders described in the bill do not constitute a nuisance per se, they do constitute a nuisance when located and maintained and operated in the manner with the resultant effects alleged in the bill, interfering with the comfortable enjoyment of the property of others in the surrounding area. Wood v. City of Chickasha, 125 Okl. 212, 257 P. 286; 46 C.J. 697; 66 C.J.S., Nuisances, § 75; Higgins v. Decorah Produce Co., 214 Iowa 276, 242 N.W. 109, 81 A.L.R. 1199; 39 Am. Jur., p. 349; Bloch v. McCown, 219 Ala. 656, 123 So. 213; Kyser v. Hertzler, 188 Ala. 658, 65 So. 967. The situation as alleged in the bill is not one which would affect only one of fastidious taste, but is such as would affect an ordinary reasonable man, and is accordingly a nuisance as described by § 1081. McClung v. Louisville & N. R. Co., 255 Ala. 302, 51 So.2d 371. But as pointed out, we need not limit the definition of a nuisance to the statutory definition contained in § 1081. Authorities, supra.

■ Assuming then that the bill in its first aspect seeks to state a cause of action apart from the ordinance adopted by the City of Tuscaloosa, we consider that in such aspect the bill states a good cause of action and the demurrer was properly overruled. It is not necessary to allege the existence of a public nuisance. This would only be the conclusion of the pleader. It is sufficient that the alleged facts show within themselves that they constitute a public nuisance.

This brings us to what is claimed to be the second aspect of the bill which is based on the ordinance adopted by the City of Tuscaloosa.

The charter of the City of Tuscaloosa is contained in the act entitled, "An Act to Incorporate the City of Tuscaloosa", approved March 12, 1873, as contained in Acts of 1872–73, pp. 377–398. Section 56 of the aforesaid act, p. 390, contains the following provision: "Be it further enacted, That the Mayor and Aldermen shall have full power to declare nuisances and to suppress, abate and remove the same." It will be observed that under the ordinance it is not a mere

maintenance or possession of chickens or other fowl which is declared to be a nuisance, but the maintaining or possession of them under such conditions or circumstances or with such results as to be offensive or unwholesome or to be a source of injurious detriment, hurt or annoyance to the health, comfort or welfare of other persons. Authorities, supra.

It seems that exception is taken to the adoption by the City of Tuscaloosa of the ordinance after permission was given to the respondent to erect the houses on the premises involved. The allegations of the bill make it evident that the respondent was put on notice that the permit to construct the buildings was issued at the risk of the respondent and if the conduct of the business in fact turned out to be a nuisance, the city would take legal action to abate it. The Commission Board expressly reserved the right to pass on any question of nuisance in the event any such question should arise. But apart from this, the respondent can have no vested and "inalienable right of property in that which is a nuisance and an owner with knowledge or notice in the premises cannot complain if loss ensues when the law deals with the property in any way reasonably necessary for the suppression of the evil in connection with which it is used." 39 Am.Jur. p. 292, § 12; Mugler v. Kansas, 123 U.S. 623, 8 S.Ct. 273, 31 L.Ed. 205.

So we think that if the bill be rested on the authority of the City of Tuscaloosa under the ordinance, which has been referred to and which is consistent with the statutes which have been cited, the alleged use of the premises as set forth in the bill constitutes a public nuisance, which the City of Tuscaloosa has the right to abate, assuming the allegations of the bill are true. Wood v. City of Chickasha, supra.

It results that the decree of the lower court is due to be affirmed.

Affirmed.

All the Justices concur.