137 So.2d 39

Ray EVERS

v.

Don L. THOMAS et al.

4 Div. 41.

Supreme Court of Alabama.

Jan. 18, 1962.

Ewell N. Clark, Florala, for appellant.

**160**

Ralph A. Clark, Andalusia, for appellees.

LIVINGSTON, Chief Justice.

This is an appeal from the Circuit Court of Covington County, Alabama, in Equity, from a final decree granting a permanent injunction against Dr. Ray Evers, appellant, to abate a nuisance caused by the operations of his farm within the city limits of Andalusia, Alabama, which caused special damages to Don L. Thomas et al., appellees.

The cause was submitted here on a motion to dismiss the appeal and on the merits.

As originally filed, the bill of complaint was against Dr. Ray Evers and Elbert Williams. The lower court entered a decree exonerating Elbert Williams, which we will note later on. The bill of complaint as originally filed alleged, in substance, that Dr. Evers was the owner of certain described real estate located within the city limits of Andalusia, Alabama; that respondents were operating a hog farm on said land, engaged in the growing, producing, raising, fattening and marketing hogs in large numbers; that there was located on said land and in close proximity to complainants in this cause a large number of hogpens commonly referred to as farrowing pens, also a large number of hogpens commonly referred to as pig parlors, and a large number of feeder pens, barn, and sheds in which a large number of hogs, to wit, several hundred, and at times 3 or 4 thousand were kept on said lands for the purpose of farrowing and rearing the pigs and for growing the hogs to maturity and marketable age and size. Complainants further alleged that a large amount of feces was deposited in the farrowing pens, the pig parlors, the feeder pens, and other structures in connection therewith and owned by the respondents, and that said feces at times accumulates to excessive quantities, amounting to many tons, and that said feces is stored in a pit or vat constructed for that purpose, and that said pit or vat is not covered or protected, and is not disinfected to prevent flies and other nauseous and obnoxious insects and bacteria; and that said premises, including pits or vats in which the feces is stored, are continuously and literally working alive with maggots and flies, and that said flies migrate to the homes of each of the complainants in great swarms, and that the complainants, and each of them, are unable to occupy their yards

or lawns during the daytime without being covered in obnoxious and filthy flies from the pens and installations of the respondents; that the filth and bacteria in the cesspool or pit in which the feces is stored are poisonous, and that said cesspool frequently fills with water and runs over, draining down the hill into a fish pond belonging to the respondent, Dr. Ray Evers, and that said drainage is so filthy and contaminated with bacteria that the same killed the fish in the pond; that said existing condition causes an obnoxious odor that can be smelled for more than one-half mile from the installations, and that said odor is so obnoxious and unpleasant that complainants cannot occupy their yards or lawns, and cannot leave their doors or windows open; and further that the respondents are storing or placing on the premises herein described large quantities of chicken feces, or manure, and that said feces is continuously infected with maggots and flies and causes odors that affect each of the complainants; that flies from said chicken feces, together with flies from other installations complained of, literally swarm over the premises of complainants; and further complainants aver and show the court that on different occasions hogs have died on the premises herein described and the carcasses were not burned or buried, that vultures and flies swarmed over the dead animals and then migrated to the homes of complainants; and that all of these conditions render the homes and premises of complainants unhealthy and unsanitary, thereby creating a menace and nuisance to the complainants and others who reside in the neighborhood; that if said operations are continued, they will materially depreciate the value of the homes and property of complainants and other people who reside in close proximity thereto. Complainants further aver that they are each permanent residents of the area in which they reside, that they own their homes, and many of the complainants have resided in their present homes for many years prior to the filing of this complaint, and that the installations complained of on the property

owned by respondents, or one of the respondents, are located in the city limits of Andalusia, Alabama, and that said location is zoned by the City of Andalusia for residential purposes.

The bill prays for a decree to the effect that the existing conditions are a nuisance to the complainants and the public generally, and to abate the same; and that the respondents be permanently enjoined from further operations of the hog farm and from farrowing and raising pigs thereon and from feeding or penning hogs on said premises in close proximity to complainants' homes; and to require respondents to remove all hogs from said premises and in close proximity to complainants' homes, and to remove all feces and to clean up and put the premises in a sanitary and healthy condition, and for further relief.

After taking the testimony in this cause and prior to submission of the cause, and with the consent of the court, complainants amended their bill of complaint, in substance, as follows: that since the filing of this suit, the respondents have erected "feeder pens" for cattle and have been feeding cattle in large numbers, to wit, 1400 head of cows, confined in small feeder pens, and that although these feeder pens are purportedly floored with concrete covered with straw, that the feces, and other foreign matter on the floor ranges from a few inches deep to belly deep to the cows, and this condition creates very unpleasant and obnoxious odors and flies in large numbers. The prayer was also amended and asks for a permanent injunction against the respondents from further operations of the feeder pens for cattle.

■ The motion to dismiss the appeal is not well taken. The decree from which the appeal is taken in the instant cause is a final decree, and the time for taking the appeal is controlled by the statute applicable to such decrees; Title 7, Sec. 788, and not by Sec. 1057, Title 7, Code of 1940. Sec. 1057 of Title 7, Code of 1940, only applies from the order granting or refusing a temporary writ of injunction. Francis v.

Scott, 260 Ala. 590, 72 So.2d 93; Employers Ins. Co. of Alabama v. Brooks, 250 Ala. 36, 33 So.2d 3; City of Decatur v. Meadors, 235 Ala. 544, 180 So. 550; Dunn v. Ponceler, 235 Ala. 280, 178 So. 47. The bill of complaint in this case was not presented to the judge for fiat as authorized by Sec. 1054, Title 7, Code of 1940. The motion to dismiss is denied.

### On The Merits

There are four assignments of error. Assignment of error No. 1 complains of the court's action in denying appellant's motion to strike the amendment to the bill of complaint.

■ As we view the amendment, it is not a departure from the original bill, but is merely an allegation of a continuation of the offensive and obnoxious conditions brought about by the feeding of cattle instead of hogs. It seems to us that the conditions brought about by feeding and housing a large number of hogs would be, for all practical purposes, the same as from feeding and housing a large number of cows. There is no merit in this insistence.

■ The second assignment of error is based on the overruling of respondents' demurrer refiled to the amended bill.

In the case of Kyser v. Hertzler, 188 Ala. 658, 65 So. 967, this court said, as follows:

"It is recognized as the rule that a private stable is not per se a nuisance. St. James Church v. Arrington, 36 Ala. 546, 76 Am.Dec. 332; 29 Cyc. 1181. It is also well understood, however, that: It may 'become a nuisance by reason of the manner in which it is constructed, kept, or used, or by reason of the location being improper or necessarily injurious to a neighbor.' 29 Cyc. 1182, and authorities there cited.

"The law may be regarded as settled that where a business, although lawful in itself, becomes obnoxious to neighboring dwellings and renders their enjoyment uncomfortable whether by smoke, cinders, noise, offensive odors, noxious gases, or otherwise the carrying on of such business is a nuisance which equity will restrain. Nor is it necessary that the nuisance be injurious to health to warrant the interference.' 1 High on Inj. § 772.

"In Grady v. Wolsner, 46 Ala. 381, 7 Am.Rep. 593, it was said: 'Anything constructed on a person's premises which, of itself, or by its intended use, directly injures a neighbor in the proper use and enjoyment of his property is a nuisance.'

"The following from Wood on Nuisances (volume 2, § 597) is also in point: 'Not only may a livery stable become a nuisance by improper location and offensive or annoying results, but it is held that *any* private stable or barn may be so located with reference to the dwellings or places of business of others, and be so improperly kept and conducted, as to become an actionable nuisance. Even in the ordinary use of property, in its use for purposes that are regarded as incident thereto, a person is bound to prevent such use from becoming a nuisance to others if possible. A man has no right to erect a barn for the keeping of horses and cattle so near to his neighbor's dwelling as to disturb the rest of those residing there by the noises produced by the animals kept there at night, or to manage it in such a way as to permit offensive stenches to emanate therefrom and float over his neighbor's premises, to his serious annoyance and discomfort.'

"While ordinarily it is, of course, recognized that a man may do an act on his own place that is not unlawful, yet he is not permitted to use his own property to the injury of another. As quoted in the case of Hundley v. Harrison, 123 Ala. [292,] 297, 26 South. 294: 'When he sends onto the lands of

his neighbor noxious smells, smoke, etc., then he is not doing an act on his own property only, but he is doing an act on his neighbor's property also, because every man has a right, by the common law, to the pure air, and to have no noxious smells sent on his lands, unless by a period of time a man has, by what is called prescriptive right, obtained the power of throwing a burden on his neighbor's property.'

"We have statutory definitions of *nuisance,* as in section 5193, Code of 1907, wherein it is said: 'A nuisance is anything that worketh hurt, inconvenience, or damage to another; and the fact that the act done may otherwise be lawful does not keep it from being a nuisance.'

"And again, as in section 5198, as follows:

" 'A private nuisance may injure either the person or property, or both, and in either case a right of action accrues.'

"Speaking to the right of the owner of land to the flow of pure air, this court, in Romano v. Birmingham Railway, Light & Power Co., [182 Ala. 335,] 62 South. 677, 46 L.R.A. (N.S.) 642, said: 'The right is incident to the ownership of land, and must be protected as well as any other valuable right. "No man has a right to interfere with the supply of pure air that flows over another's land any more than he has to interfere with the soil itself." ' "

We have set out, substantially, enough of the bill of complaint to indicate clearly that the demurrers were properly overruled.

Assignment of error No. 3 is as follows:

"It was error for the Court in its final decree to deny the motion to dismiss the bill of complaint as originally filed and as amended."

The argument of appellant to support this assignment of error is to the effect that because the original bill charged that appellant, Dr. Ray Evers, *and* Elbert Williams did all the acts complained of, whereas the proof showed absolutely no connection between Elbert Williams and any of the actual things averred in the bill of complaint as amended, therefore, there is a variance between the allegations and proof, which is fatal to the whole bill. We cannot agree.

The case cited in support of this proposition, Tedescki v. Burger et al., 62 Ala. 534, 50 So. 150, is evidently in error (the correct citation is 162 Ala. 534, 50 So. 150) and does not in any way sustain the view of appellant. While the evidence in the instant case does not support a finding against Elbert Williams, and the trial court correctly so held, the trial court nevertheless could find the issues against Dr. Ray Evers, and there is no fatal variance between the allegations and the proof.

Assignment of error No. 4:

"It was error for the Court in its final decree to grant the relief to the appellees and complainants below therein awarded."

As we view it, this assignment of error only questions the sufficiency of the evidence.

The evidence was taken ore tenus before the trial court, and in addition, the trial court viewed the premises before rendering his decree. In such a case, the findings of the trial court are like unto a jury's verdict and will not be here disturbed unless plainly and palpably wrong.

We have examined the entire record and are clear to the conclusion that the decree of the trial court must be affirmed.

Affirmed.

LAWSON, STAKELY, and MERRILL, JJ., concur.