201 So.2d 391

Dub COLEMAN et al.

v.

Champ ESTES et al.

6 Div. 388.

Supreme Court of Alabama.

June 22, 1967.

Rehearing Denied Aug. 17, 1967.

Gordon, Miglionico, Cleveland & Chancey, Birmingham, for appellants.

Corretti, Newsom & Rogers, Birmingham, for appellees.

MERRILL, Justice.

This appeal is from a decree declaring certain lots owned by appellants, on which they operated a junk yard, to be subject to the city zoning law, exempting others as a "nonconforming use," requiring the use of mosquito spray and the installation of certain sanitary measures.

The bill of complaint alleged that complainants lived in the neighborhood where respondents operated a junk yard on Lots 1 through 10 and 15 through 18 in Block 8 of the Survey of Rosemont in the City of Birmingham. It was alleged that the operation of the junk yard was a violation of zoning ordinances of the city and that the junk yard constituted a nuisance. The prayer sought a permanent injunction to enjoin the operation of a junk yard on the premises, the permanent abatement of the nuisance and for general relief.

On May 30, 1966, the trial court rendered a final decree in which the respondents were enjoined from using any part of Lots 1 through 5 and 15 through 18 for any purpose other than as single family residence dwellings and directed respondents to remove all automobile bodies from said lots within thirty days. Lots 6 through 10 were exempted because they had been used as a junk yard and storage for auto-

mobile salvage before the land became subject to the zoning ordinance and it was held that such use constituted a nonconforming use under the ordinance. Respondents were also ordered to spray the lots with insecticides and were enjoined from using any toilet facilities on these lots which were not connected with sewer facilities.

Respondents filed a motion for a rehearing and on July 5, the court took the motion under advisement but permitted the parties to submit further testimony in the form of affidavits relative to the use of Lots 16, 17 and 18. Both sides submitted numerous affidavits and the motion for rehearing was overruled on August 18, 1966. This appeal followed.

Block 8, Rosemont Survey, was outside the City of Birmingham originally. This and other property was annexed to the City of Birmingham by an election held on September 16, 1949. The election was contested and the annexation was finally validated in this court on March 1, 1951. See City of Birmingham v. Norton, 255 Ala. 262, 50 So.2d 754. The property became subject to a City of Birmingham ordinance on May 13, 1953. Lots 1 through 5, Lot 11 and Lots 12 through 18 were zoned residential and Lots 6 through 10 were zoned commercial. A junk yard was a prohibited use for all of Block 8. In October, 1961, a new ordinance was adopted in which all of Block 8 was zoned residential and there had been no change since then and the time of the trial.

Appellants state in brief: "At the hearing on motion for rehearing the trial judge indicated he was of the opinion that the zoning ordinance of May 13, 1953 was retroactive to September 16, 1949—the date of the annexation election and the only date mentioned in the decree."

The question of the retroactivity of the zoning ordinance is not before us for consideration although appellants stressed it in brief and in oral argument.

The rule is that argument in brief reciting matters not disclosed by the record cannot be considered on appeal, Christian v. Reed, 265 Ala. 533, 92 So.2d 881; and the record cannot be impeached on appeal by statements in brief, by affidavits, or by other evidence not appearing in the record. Evans v. Avery, 272 Ala. 230, 130 So.2d 373; Liberty National Life Ins. Co. v. Patterson, 278 Ala. 43, 175 So.2d 737.

We quote from the decree of the trial court:

"That all of the said lots are zoned by the City of Birmingham for single family residences; that the area in which the said lots are located was annexed by the City of Birmingham on September 16, 1949; that at the time the said lots became subject to the zoning ordinances of the City of Birmingham Lots 6, 7, 8, 9 and 10 were being used for commercial purposes, including the operation of an automobile salvage and junk yard and hardware business and said use constituted a 'nonconforming use' within the meaning of the zoning ordinances of the City of Birmingham,

"That since the time the zoning ordinances of the City of Birmingham became effective as to said property, the respondents have, in violation of the said zoning ordinances, enlarged and expanded their automobile parts and salvage business and junk yard onto the remaining lots owned by the respondents or in which they have an interest."

There is nothing in the decree to suggest that the trial court held the zoning ordinance to be retroactive. But the second paragraph of the decree quoted supra does find that the respondents have enlarged their "nonconforming use" to other lots than those specifically enumerated.

This was a question of fact to be determined by the trial court. Appellants concede in brief that as to Lots 16, 17 and 18, the "conflict is irreconcilable."

But the trial court found, based upon the testimony, both oral and by the affidavits, that the only lots exempt because of a nonconforming use were Lots 6 through 10. We are not convinced that the finding of fact by the trial court was plainly wrong.

Moreover, we have said that the intention of zoning laws as regards a use of nonconforming property is to restrict rather than extend it, because the objective is the gradual elimination of the nonconforming use by obsolescence or destruction by fire or the elements. Given the objective of zoning to eliminate nonconforming uses, courts throughout the country generally follow a strict policy against their extension or enlargement. Moore v. Pettus, 260 Ala. 616, 71 So.2d 814, and cases there cited. Here, the great weight of the evidence was that most of the extension or enlargement of the junk yard has occurred from and after 1960.

We think appellants' argument as to laches is also answered by Moore v. Pettus, supra, where it was said: "Laches is not mere delay, but such delay that works a disadvantage to another. So long as parties are in the same condition, it matters little whether one presses a right promptly or slowly so long as he acts within limits allowed by law. Taunton v. Trammell, 254 Ala 252, 48 So.2d 190."

Appellants argue under assignments of error 14, 20, 29 and 38 that the court erred in including Lot 15 in the order because Lot 15 "has a house on it and no part of it is being used for the storage of salvage automobiles." Here, it was shown that houses on other lots had been removed and the lots converted to part of the junk yard. The proof was that the yard was being extended progressively. We have held that a prospective use of property may be enjoined where by its location or other circumstances and conditions prevailing the use will be a nuisance per accidens and result in peculiar and continuing or recurring injury to the com-

plainant. Jackson v. Downey, 252 Ala. 649, 42 So.2d 246; Lauderdale County Board of Education v. Alexander, 269 Ala. 79, 110 So.2d 911; Tit. 7, § 1083, Code 1940. Lot 15 is a part of the tract owned by appellants and was susceptible to be used in part or in whole as were the other lots.

Under a prayer for general relief in a bill in equity, the court has the power to mold relief to meet the equities developed in the trial. Winslett v. Rice, 272 Ala. 25, 128 So.2d 94, and cases there cited.

Where a court of equity has assumed jurisdiction for injunctive relief, it will retain the bill for all purposes necessary to a complete determination and settlement of the matters involved, though they be a purely legal nature. May v. Lowery, 214 Ala. 230, 107 So. 67; and having assumed jurisdiction of a part, the court will determine all the interrelated equities of the whole. "Equity delights to do justice, and not by halves." Moore v. Moore, 255 Ala. 393, 51 So.2d 683. Here, the court correctly included Lot 15 in its order.

Appellants argue under assignment 44 that the court erred in enjoining respondents from using toilet facilities not connected to a sewer in the absence of any allegations in the pleadings raising the issue. As already noted, one theory of the bill was that of nuisance. One of the complainants testified that she had observed work crews and different men relieve themselves behind a fence on appellants' property, and one of the respondents testified that the only toilet facility was an outdoor privy.

The trial court had the power to dispose of this feature of the nuisance under the same principle as stated in May v. Lowery, supra, and Moore v. Moore, supra. And the same can be said of assignment 43 which charges error in the requirement that respondents keep the premises of Lots 6, 7, 8, 9 and 10 adequately and regularly

sprayed with insecticides and to take neces-sary precautions to prevent the breeding of mosquitoes, insects, rodents and other pests on the premises.

For over 75 years, this court has said and restated that any establishment erected on the premises of the owner, though for the purposes of trade or business lawful in itself, which, from the situation, the inherent qualities of the business, or the manner in which it is conducted, directly causes substantial injury to the property of another, or produces material annoyance and inconvenience to the occupants of adjacent dwellings, rendering them physically uncomfortable, is a nuisance. In applying this principle, it has been repeatedly held that smoke, offensive odors, noise or vibrations, when of such degree or extent as to materially interfere with the ordinary comfort of human existence, will constitute a nuisance. English v. Progress Electric Light & Motor Co., 95 Ala. 259, 10 So. 134; Hundley v. Harrison, 123 Ala. 292, 26 So. 294; Dixie Ice Cream Co. v. Blackwell, 217 Ala. 330, 116 So. 348, 58 A.L.R. 1223; Brown v. Allied Steel Products Corp., 273 Ala. 184, 136 So.2d 923. See Tit. 7, § 1081, Code 1940, which defines a nuisance as "anything that worketh hurt, inconvenience, or damage to another; and the fact that the act done may otherwise be lawful does not keep it from being a nuisance."

Testimony was heard by the trial court that the automobile bodies were stored in a disorderly way, stacked on top of one another and when they were flattened out mechanically, a great deal of noise was created; that a public address system also created noise and disturbance; that mosquitoes were a problem, and people in the neighborhood could not sit on their porches or in their yards because of swarms of mosquitoes; that when the junked automobiles were loaded on trucks to be moved, water runs out of the bodies; that there had been offensive odors and smoke when automobiles had been burned; that rats and snakes have been seen coming out of the junk yard, and that these matters get worse as the business is expanded.

Where suits to abate nuisances were heard on oral testimony before the trial court, we must indulge the usual presumption in favor of the trial court, Evers v. Thomas, 273 Ala. 159, 137 So.2d 39; McCraney v. City of Leeds, 241 Ala. 198, 1 So.2d 894; Town of York v. McAlpin, 232 Ala. 158, 167 So. 539. The same rules apply to other features of the decree. We have repeatedly declared that when a case is tried by the court without the intervention of a jury, on evidence heard ore tenus, the conclusion of the trial judge as to a question of fact has the effect of a verdict of a jury, and that if it is supported by the evidence, it is not subject to review. Hughes v. McAnnally, 272 Ala. 169, 130 So.2d 176; Howell v. Hallett Mfg. Co., 278 Ala. 316, 178 So.2d 94. We cannot say that the court's decree is not supported by the evidence.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and HARWOOD, JJ., concur.