**CITY OF DALLAS, Texas, Appellant,**

v.

**TURTLE CREEK MANOR,
INC., Appellee.**

**No. 8407.**

Court of Civil Appeals of Texas,
Texarkana.

Jan. 18, 1977.

N. Alex Bickley, City Atty., J. Stanley Knight, Asst. City Atty., Dallas, for appellant.

John Plath Green, Green, Gilmore, Crutcher, Rothpletz & Burke, Dallas, for appellee.

CORNELIUS, Justice.

Appellant City of Dallas brought this action to enjoin Turtle Creek Manor, Inc., appellee, from violating the City's comprehensive zoning ordinance. The City alleged that appellee was operating an establishment for the treatment of alcoholic, narcotic or psychiatric patients at 2707 Routh Street in Dallas where such use was prohibited by the ordinance. Appellee contended that it only operated a lodging and boarding house at 2707 Routh Street, and further that the City was precluded by estoppel or

res judicata from maintaining its suit because it had issued appellee a building permit and a certificate of occupancy at that location. It was conceded by the City that the operation of a lodging and boarding house was permitted at 2707 Routh Street as a nonconforming use. Trial was to the court without a jury. Findings of fact and conclusions of law were made to the effect that (1) appellee's use of the premises in question did not constitute the care of alcoholic, narcotic or psychiatric patients as defined by the ordinance, but did constitute use as a lodging or boarding house, and (2) as the City granted appellee a building permit and a certificate of occupancy, and no appeal to the Board of Adjustment was taken from such action, the City's suit was barred by res judicata.

The City's appeal presents twelve points of error which contend generally that (1) the use of the premises in question constitutes, as a matter of law, the care or treatment of alcoholic, narcotic or psychiatric patients, (2) there is no evidence or insufficient evidence to support the trial court's finding that the use was that of a lodging or boarding house, and (3) the court erred in concluding that this action is barred by res judicata.

The zoning ordinance defines "lodging or boarding" as follows:

"*Lodging or boarding*: Lodging shall mean where one or more dwelling units are occupied or intended to be occupied by five or more persons who are not husband and wife, son or daughter, mother or father, sister or brother of the owner or operator. Boarding shall mean where meals are provided by the operation of a lodging house."

The ordinance defines an establishment for the care of alcoholic, narcotic or psychiatric patients as one:

". . . offering resident or out-patient treatment to alcoholic, narcotic or psychiatric patients."

Before appellee decided to purchase the property in question, Mr. Salzberger, a member of appellee's board of directors, discussed the matter with Mr. William McClintlock, the assistant director of Urban Rehabilitation of the Department of Housing and Redevelopment of the City of Dallas. Mr. McClintlock told Mr. Salzberger what would be necessary in order to secure a building permit and a certificate of occupancy as a lodging and boarding house. Building permits were obtained, the property was purchased by appellee, and some $67,000.00 worth of improvements were made. When the work was completed an occupancy record card, a prerequisite to occupancy, was issued by the City. The original application for the building permit described the use of the property as a "rooming house." The permit issued pursuant to that application likewise specified the use as "rooming house." A supplemental application for air conditioning, which described the use as a "halfway house," was apparently refused, as indicated by the notation "reject-zoning" which appears on it. Another application for the air conditioning was subsequently made, and it listed the use as "boarding house." The notation "Ok —Boarding House" appears on the bottom of that application and the permit issued in response to it also describes the use as "boarding house." Mr. Salzberger testified that before Mr. McClintlock issued the permits, he was fully apprised of the type of operation appellee intended to conduct on the property. As no appeal was taken to the Board of Adjustment from the action of the City in issuing the permits, appellee contends, and the trial court found, that the City is barred by res judicata from enjoining appellee's use of the property.

We do not regard the issue of res judicata to be dispositive of this case. The permits were issued to appellee for the purpose of improving and operating a rooming and boarding house. The City did not then, and does not now, dispute appellee's right to operate a rooming and boarding house at its present location, but it contends that appellee was using the property for a different purpose not authorized by the permits and expressly prohibited by the ordinance. If that contention is correct, the City was entitled to enjoin the actual un-

lawful use, and the fact that permits had been issued for *another type of use* would be no barrier. The decisive issue then was whether appellee was using the property as a lodging or boarding house or as an "establishment for the treatment of alcoholic, narcotic or psychiatric patients."

■ The meaning of "establishment offering resident or out-patient treatment to alcoholic, narcotic or psychiatric patients" is a matter of construction of the ordinance, and is a question of law. *Harris v. Laquinta-Redbird Joint Venture*, 522 S.W.2d 232 (Tex.Civ.App. Texarkana 1975, writ ref'd n. r. e.); 82 Am.Jur.2d, Zoning and Planning, Sec. 157.5, p. 650. But whether *a particular use comes within that meaning* is a question of fact. *Langbein v. Board of Zoning Appeals*, 135 Conn. 575, 67 A.2d 5 (1949); *Coleman v. Estes*, 281 Ala. 234, 201 So.2d 391 (1967); 82 Am.Jur.2d, Zoning and Planning, Sec. 157.5, p. 650. The words used by the ordinance to describe the prohibited use are specific and unambiguous. A resort to extrinsic aids of construction is therefore unnecessary. According to both its commonly accepted meaning and its judicial interpretation, "treatment" refers to the steps taken to effect a cure of an injury or disease, and includes examination and diagnosis as well as the application of medical remedies. *Goodrich v. Tinker*, 437 S.W.2d 882 (Tex. Civ.App. El Paso 1969, writ ref'd n. r. e.); Black's Law Dictionary, 4th Ed. 1957, p. 1673. "Patient" means an ill person, commonly one under the treatment or care of a physician or surgeon or in a hospital. *Red v. Group Medical and Surgical Service*, 298 S.W.2d 623 (Tex.Civ.App. Galveston 1957, no writ); *Brown v. Moore*, 247 F.2d 711 (3rd Cir. 1957) cert. denied, 355 U.S. 882, 78 S.Ct. 148, 2 L.Ed.2d 112. A fact question is therefore involved—whether appellee is operating an establishment which takes steps to cure persons who are ill from the use of alcohol or narcotics, or from psychosis. To support its contention that appellee was operating such an establishment, appellant relied upon the following evidence: There are thirty-two (32) residents of Turtle Creek Manor. Each has formerly been a patient of a mental institution. To become a resident a person must apply for admission by executing an application form which states that Turtle Creek Manor is a "rehabilitation residence for men and women." The form inquires whether the applicant has a psychotherapist, and authorizes the division of vocational rehabilitation and others to release medical, psychiatric or psychological records to the admissions committee of Turtle Creek Manor. Turtle Creek Manor receives operating funds from the Texas Rehabilitation Commission, the Veterans Administration, the Commission for the Blind, the Dallas County Mental Health and Mental Retardation Unit and from private individuals. Residents do not pay for their own room and board. Turtle Creek Manor employs two full-time and eight part-time counselors. Three of the part-time counselors reside at 2707 Routh Street and provide nighttime and weekend counseling for the residents. The majority of the residents avail themselves of the counseling services and receive counseling an average of five hours per week. In a form letter used to solicit contributions, appellee refers to itself as "an innovative approach to the solution of mental problems" and as "providing Dallas and Texas with this much needed alternative to mental health treatment." The information sheets attached to the letter state that Turtle Creek Manor:

". . . has the distinction of being Dallas's first and one of Texas's few halfway houses for emotionally disturbed persons. During its six years of operation, Turtle Creek Manor has achieved a record of successful and innovative leadership in demonstrating the effectiveness of the halfway house concept for the rehabilitation of the emotionally disturbed in a community setting.

· · · · ·

The variety of services offered by Turtle Creek Manor includes room, board, 24 hour supervision, individual and group counseling, vocational counseling, and help with finding and holding jobs, a week's intensive orientation for new resi-

dents, an arts and crafts program, and recreational activities . . .

.    .    .    .    .

Since July, 1968, Turtle Creek Manor has aided in the rehabilitation of 700 individuals. Upon leaving Turtle Creek Manor, 84% of our 'graduates' become self-supporting citizens without further need of residential mental health services. This success rate is even more impressive with the knowledge that our average resident has been hospitalized 2½ times before he comes to us.

.    .    . .    .    .

The local mental health community is agreed that Turtle Creek Manor is a necessary part of the mental health system in Dallas and Texas. Leaders in the field are increasingly agreed that the halfway house offers the best hope for most of our emotionally disturbed citizens to leave behind what is so often an economically dependent or institutionalized life style to become self-supporting and contributing members of our society.

Turtle Creek Manor is the way of the future for mental health care with the exciting distinction of being NOW!"

The Articles of Incorporation of Turtle Creek Manor, Inc. state:

"The purposes for which the corporation is organized are to maintain a residence for the use of patients and ex-patients from mental hospitals and to facilitate said mental patients in their rehabilitation for return to their employment and community living. The acceptance of patients or ex-patients for residents shall be based entirely upon recommendations from appropriate medical advisers with respect to the capacity of such persons for rehabilitation, and such acceptance shall be entirely without regard to any ability of any resident to pay any fee or expenses of any kind with respect to such residence."

To sustain its position appellee relied upon the following evidence: James Essinger, appellee's executive director, testified that Turtle Creek Manor provides:

". . . a residence for people who come who are discharged from mental hospitals, a place to stay, a place to sleep, and a place to eat, a place to provide or to have dialogue with other people, to get back on their feet in society."

He stated that more than 50% of the residents have jobs. In answer to the question: "Is it the main purpose of Turtle Creek Manor to provide psychiatric or sociological assistance to people living at Turtle Creek Manor? A helping hand?", he said: "No, sir." Mr. Salzberger, a member of appellee's Board of Directors, testified in part as follows:

"A  Their job basically is to find a roof for the heads of these people who have been dismissed from institutions, discharged as missing people. They live here. They have their board and they have their room, and they have constant contact with their peers, with people who have had the same type of problems. They live together in hopes that this can help them get into society more easily than if they went back to what their original surroundings were.

Q  Now, do you treat alcoholics at 2707 Routh Street?

A  Not at all.

Q  Do you have or to your knowledge have you had any alcoholics who was currently an alcoholic in your 2707 Routh Street?

A  Not to my knowledge.

Q  Now, do you dispense any drugs at 2707 Routh Street?

A  Not even an aspirin.

Q  Will you keep a person who is being treated for alcoholic—as an alcoholic—being treated—strike that.

Do you know of any narcotic person who is currently a narcotic in your house?

A  Not that I know of.

Q  Have you ever treated a person who was a narcotic?

A  Never, to my knowledge.

Q Have you ever had a person living in your quarters who was currently under the treatment of a psychiatrist?

A Not to my knowledge.

Q Have you ever—has the Defendant ever performed any psychiatric treatment at 2707 Routh Street?

A None whatsoever.

Q Do you have on call any psychiatrist to serve the people there?

A None. If a person requires any help, he goes back to the person who referred him to us originally. We don't refer to anybody nor, sir, do we have anybody on staff or on call.

Q Is it not true that the only people there are people who have been discharged as a psychiatric patient?

A That's the only basis we will accept them.

Q Or a person who has been discharged as a narcotic?

A That I can't answer but I would guess it is exactly the same answer. If he is being treated now, we don't want any part of it.

Q What about alcoholics?

A Same thing as a narcotic."

Mr. Salzberger further testified that Turtle Creek Manor would not accept any resident if they knew he was still under psychiatric treatment of any sort.

Upon the foregoing evidence, the trial judge found as a fact that the present use of the property was not for the treatment of alcoholic, narcotic or psychiatric patients, but was for a lodging or boarding house. We find the evidence sufficient to support that conclusion. According to appellee's evidence, no one presently under such treatment is a resident of Turtle Creek Manor. All residents are those who have been dismissed or discharged from such treatment. No medicine is administered or dispensed. No medical treatment is administered, unless it can be said that "counseling" is such treatment. Whether counseling amounts to medical treatment depends upon the circumstances in which it is administered or provided. In the context of this case, it cannot be said as a matter of law that

appellee's counseling services constituted the application of medical remedies. The same is true of the 24 hour supervision. If appellee's use of the property was not for the care or treatment of alcoholic, narcotic or psychiatric patients, it would, according to undisputed evidence, fall within the ordinance's definition of a lodging or boarding house.

Appellant relies heavily upon Turtle Creek Manor's Articles of Incorporation and certain of its advertising brochures which refer to its functions as a halfway house for the rehabilitation of "mental patients" and "emotionally disturbed persons." But the question here is not what Turtle Creek Manor advertised or stated its purposes to be, *but what type of establishment it was actually maintaining.* Considering the evidence of appellee's actual use of the property, we cannot say the trial court's findings are without sufficient evidence to support them.

The judgment is affirmed.