288 So.2d 761

Robert **BALDWIN** et al.

v.

James E. **McCLENDON** et al.

**SC 182.**

Supreme Court of Alabama.

Jan. 24, 1974.

Nash, NeSmith & Walker, Oneonta, for appellants.

Marshall H. Sims, Trussville, for appellees.

McCALL, Justice.

The respondents, Robert Baldwin and W. J. Bottcher, appeal from an adverse final decree in equity.

The appellees, James E. McClendon and Ethel McClendon, are husband and wife. Their home, for some fifteen years, has been a forty-seven acre farm, located in a rural agricultural area of Blount County, about seven miles southeast of Oneonta on the road to Springville. In early 1970, the appellants commenced hog production on a large commercial scale on the appellant Baldwin's property which adjoins the appellees. In their business, the appellants operate two hog parlors each with a separate connecting lagoon. One hog parlor will house something over a thousand hogs and a second smaller one will accommodate approximately four hundred. There is also a third servicing lagoon. The hog parlor is a covered shelter with a concrete floor, laid on a plane, slightly declining toward the adjoining lagoon. The hogs are fed and watered in the parlors, and there they live, sleep and grow to a desired weight, when they are topped out. The lagoons which adjoin the hog parlors are related facilities, designed for the purpose of retaining and disposing of the waste material excreted by the hogs on the floor in their parlors. These lagoons are entrenched bodies of water into which the hog waste is flushed down with water in cleaning the parlor floors. In the lagoons, the waste material, comingling with the water, creates a chemical reaction resulting in a disintegration of the waste. This causes the emission of offensive odors. During the trial, the extent and intensity of the odor was the subject of much conflicting testimony. The appellees and witnesses offered by them, in general, said that the odor was so bad that they had to keep the doors and windows in the house closed, that it sickened them at the stomach, caused loss of appetite and practically ruined all outdoor recreation about the homeplace. The appellees' residence was said to be at distances varying from two hundred to a thousand feet from the nearest hog parlor and adjoining lagoon. Witnesses testified that these facilities adjoined the appellees' land near the division line between the parties.

While much of the evidence conflicts, the appellants admit in their brief that there was an odor which arose from the operation of the hog parlor and that the evidence was in conflict as to how far it could be detected.

After stating that he visited the appellees' premises and inspected the stream in their pasture, the rock formation from which part of it flowed, the hog parlors and lagoons operated by the appellants, and the poultry houses and hog pasture of an adjacent neighbor, the trial judge found "with no doubt about it," that the appellants' operations emitted foul odors which had a detrimental effect on the appellees' enjoyment of their home and the value of their property.

On the premise that it was not quite clear from the testimony of the realtor McGinnis whether or not the entire damage of $6,000 was caused by the appellants' operation of the hog parlors and lagoons, or to poultry houses in the general area, the court said that, giving the benefit of all doubts to the appellants, it finds the damages, as far as the appellees' property is concerned, to be $3,000, due to the noxious and offensive odors brought about by the nearby operation of the hog parlors and lagoons.

The court further found that the operation of the hog parlors and lagoons was an obnoxious nuisance subject to abatement by a court of equity, and that the appellees suffered damages from the nuisance because of its proximity to their home, one of the lagoons being about as close to the appellees' property line as it could be built. The court also observed that the appellants had spent some $31,300 in creating the hog parlors and lagoons, and that an injunction would bring a severe blow to them. The court concluded that the appellees were entitled to have the nuisance abated, or else, be compensated in damages, if the nuisance is allowed to continue.

Accordingly, the court ordered and decreed that the appellants be enjoined, pro-

hibited and restrained from operating the hog parlors and lagoons, provided that, if the appellants paid into the court the sum of $3,000 as damages for the use of the appellees, the injunction would not go into effect, and the appellees' only relief would be compensation for damages, but, if not paid within thirty days, the injunction would go into full force and effect without further orders of the court.

■ The appellants argue that their operation is carried on in a rural community given over almost entirely to agricultural pursuits, such as the growing of farm produce, the raising of turkeys and chickens, the dairy business, and hog and cattle production, and that it follows that fowl and animal odors will permeate the area to some degree. They assert that the appellees should endure some unpleasantness and not be permitted to enjoin a lawful business, the facilities for which were constructed according to approved plans and specifications, and the operation of which is conducted in a reasonable manner.

While these contentions must be considered in deciding the case, we think the decision also hinges on other factors, such as the location and proximity of the operation to the appellees' home, the intensity and volume of the odors, their interference, if any, with the appellees' own well-being and the enjoyment of their home, and any consequential depreciation in value of their home. It appears that the trial judge considered these matters.

In Grady v. Wolsner, 46 Ala. 381, the court said that anything constructed on a person's premises which, of itself, or by its intended use, directly injures a neighbor in the proper use and enjoyment of his property, is a nuisance.

■ In 1 Wood on Nuisances, § 556, quoted in Hundley v. Harrison, 123 Ala. 292, 297, 26 So. 294, the author lays down the rule as to a private nuisance to be that a man may do an act on his own land which is not unlawful or wrong—not using it in such manner as to injure another, for he may not so use his property as to injure another. Hundley, supra, states:

"* * * 'When he sends on to the lands of his neighbor noxious smells, smoke, etc., then he is not doing an act on his own property only, but he is doing an act on his neighbor's property also; because every man has a right, by the common law, to the pure air and to have no noxious smells sent on his lands, unless, by a period of time a man has, by what is called prescriptive right, obtained the power of throwing a burden on his neighbor's property.' * * *"

The above statement of a principle should be and is qualified in the same decision, where the court said:

"* * * 'In the case of noisome smells, as with nuisances from smoke or noxious vapors, the stenches must be of such a character as to be offensive to the senses, or as to produce actual physical discomfort, such as materially interfere with the comfortable enjoyment of property within their sphere. It is not necessary that the smells should be hurtful or unwholesome, it is sufficient if they are offensive, or produce such consequences, inconvenience or discomfort, as to impair the comfortable enjoyment of property, by persons of ordinary sensibilities,'— such as people generally, in the absence of proof to the contrary, will be presumed to have. 'A smell that is simply disagreeable to ordinary persons, is such physical annoyance as makes the use of property producing it a nuisance, whether it be hurtful in its effects or not.' . . . § 563; 16 Am. & Eng. Enc.Law, 948; Campbell v. Seaman, 63 N.Y. 568, [s.c.] 20 Am.Rep. 567."

On several occasions, we have defined a private nuisance as "any establishment, erected on the premises of one, though for the purposes of trade or business, lawful in itself, which, from the situation, the inherent qualities of the business, or the manner in which it is conducted, directly causes

substantial injury to the property of another, or produces material annoyance and inconvenience to the occupants of adjacent dwellings, rendering them physically uncomfortable, is a nuisance. In applying this principle, it has been repeatedly held that smoke, offensive odors, noise, or vibrations, when of such degree or extent as to materially interfere with the ordinary comfort of human existence, will constitute a nuisance." English v. Progress Electric Light & Motor Co., 95 Ala. 259, 10 So. 134; Hundley v. Harrison, 123 Ala. 292, 26 So. 294; City of Selma v. Jones, 202 Ala. 82, 79 So. 476; Coleman v. Estes, 281 Ala. 234, 201 So.2d 391. Title 7, § 1081, Code of Alabama, Recompiled 1958, defines what is a nuisance as follows:

"A nuisance is anything that worketh hurt, inconvenience, or damage to another; and the fact that the act done may otherwise be lawful does not keep it from being a nuisance. The inconvenience complained of must not be fanciful, or such as would affect only one of a fastidious taste, but it should be such as would affect an ordinary reasonable man."

Guided by the above statements, whether or not a private nuisance exists depends on the facts in the case, Martin Bldg. Co. v. Imperial Laundry Co., 220 Ala. 90, 124 So. 82, and the weight and credibility that the court gives to the testimony and evidence heard in open court, including the fact that the trial judge made a personal inspection of the subject property and stated his own findings.

The trial court concluded from all the evidence that the odors and gases which came from the hog parlors and lagoons were of such noxious intensity and volume as to interfere with the appellees' enjoyment of their home and made its use physically uncomfortable, less desirable and less valuable than it otherwise would be.

We have read the evidence in the record, as well as the condensed recital of the testimony in the appellants' brief. We allude to this only to say that ample legal evidence appears to support the trial judge's finding and conclusion that a private nuisance did in fact exist. The determination as made by the trial judge, when the evidence is taken orally, as here, is favored with a presumption of correctness, which we will not disturb on appeal unless plainly erroneous or manifestly unjust, especially where the trial judge has made a personal inspection of the premises before making his finding of fact. Casey v. Keeney, 290 Ala. 94, 274 So.2d 68; Page v. Jacobson, 289 Ala. 114, 266 So.2d 271; Barnett v. Millis, 286 Ala. 681, 246 So.2d 78; Lawson v. Garrett, 286 Ala. 125, 237 So.2d 648. We cannot say from the evidence that the trial judge's findings are plainly erroneous or manifestly unjust. There was no error in the court's decreeing that a private nuisance existed.

In the prayer of their bill of complaint, the appellees specifically pray for a writ of injunction to enjoin the nuisance, and also, for monetary damages. In addition, the appellees pray for general relief. The court decreed an injunction to issue, conditioned, however, on the failure of the appellants to pay into court within thirty days from the date of the decree the sum of $3,000, as damages, for the use of appellees. The appellants have not contended that the court lacked power to enter such a decree, granting, in the alternative, the relief awarded to the appellees. The objection is that the court committed manifest error, because the decree is contrary to the great weight and preponderance of the evidence, and that there is a lack of evidence to support it. As we have already pointed out, we are unable to agree with these contentions.

Here the object of the bill is to abate a nuisance and to recover attendant damages. In Machen v. James, 266 Ala. 454, 97 So.2d 542, the court said it would not be proper to issue an injunction in a case of a permanent nuisance, but it considered the monetary damages suffered by the com-

plainant and entered a judgment for such. In doing so, the court said:

" * * * . It is a settled principle that where injunctive relief is denied the court has the power to mold its decree and award damages in lieu of such relief where the exigencies of the case demand. * * * "

▆▆▆ Under a prayer for general relief, a court of equity has power to mold its relief to meet the equities developed in the trial, Winslett v. Rice, 272 Ala. 25, 128 So.2d 94; Coleman v. Estes, 281 Ala. 234, 201 So.2d 391, that are consistent with the allegations of the bill. Owen v. Montgomery, 230 Ala. 574, 161 So. 816; Cox. v. Cox, 267 Ala. 372, 102 So.2d 23. Where a court of equity assumes jurisdiction for injunctive relief, it will retain the bill for all purposes necessary to a complete determination and settlement of the matters involved, though they be purely of a legal nature. May v. Lowery, 214 Ala. 230, 107 So. 67.

"In this jurisdiction we recognize, in cases seeking injunctive relief, the 'comparative injury doctrine,' not universally accepted. Brede v. Minnesota, etc., Stone Co., 143 Minn. 374, 173 N.W. 805, 6 A.L.R. 1092. As said by this court in Clifton Iron Co. v. Dye, 87 Ala. 468, 6 So. 192: 'But it is not every case of nuisance, or continuing trespass, which a court of equity will restrain by injunction. In determining this question, the court should weigh the injury that may accrue to the one or the other party, and also to the public, by granting or refusing the injunction.' " Martin Bldg. Co. v. Imperial Laundry Co., 220 Ala. 90, 124 So. 82.

In Harrisonville v. Dickey Clay Co., 289 U.S. 334, 53 S.Ct. 602, 77 L.Ed. 1208, the court held that while the discharge of effluent from a sewage disposal plant into complainant's creek was not a permanent nuisance, nonetheless it was a tort; and the nuisance, being continuous or recurrent, was an injury for which an injunction might be granted. The Supreme Court of the United States concluded though:

" * * * Where substantial redress can be afforded by the payment of money and issuance of an injunction would subject the defendant to grossly disproportionate hardship, equitable relief may be denied although the nuisance is indisputable. This is true even if the conflict is between interests which are primarily private. * * * "

There the court ordered the cause remanded to the District Court to determine the amount of depreciation in the property caused by the nuisance, and to enter a decree withholding an injunction, if such sum was paid within the time to be fixed by that court.

Prosser on Torts, 4th Ed. (1971), p. 603, 604, states:

" * * * Furthermore, even where there is an existing nuisance and present harm, the equity court may in its discretion deny the injunction where the balance of the equities involved is in favor of the defendant. It may take into consideration the relative economic hardship which will result to the parties from the granting or denial of the injunction, the good faith or intentional misconduct of each, and the interest of the general public in the continuation of the defendant's enterprise. *Where liability for damages is concerned, the defendant's conduct may be found to be so unreasonable that he should pay for the harm that his factory is causing, but where an injunction is in question, it may be found to be still so far reasonable that he should be allowed to continue it if payment is made.* * * * " (Emphasis added.)

In 66 C.J.S. Nuisances § 131, p. 935, it is stated:

" * * * In a proper case the court may direct that defendant, if it will

avoid the granting of a permanent injunction restraining it from the operation of the plant or establishment constituting the private nuisance, pay to plaintiff the damages sustained by him. * * *"

Again in 43 C.J.S. Injunctions § 217(3), p. 956, it is said:

"The court may ascertain the damages and provide for withholding or issuing an injunction accordingly as defendant pays or fails to pay such damages. * * *"

■ Here, the trial court decreed that the appellees were entitled to have the nuisance abated, or else be compensated in damages, if the nuisance is to continue. No doubt the court deemed such relief appropriate under the facts. We will not undertake to surmise the court's reasons for so decreeing. We do state though that there are facts and law present to support the trial court's decision. The authorities that we have cited above make it clear that the trial court had the power and discretion to make this decision. No cross-appeal has been taken.

■ The effect of the decree is clear. If the appellants do not pay the $3,000, the nuisance will be abated, and no damages will then be forthcoming, because the court did not award any damages other than to realty. On the other hand, if the appellants pay the damages, they may continue their operation, and this will continue indefinitely the depreciated value of the appellees' property. The damages awarded are measurable for all time, because if paid, the nuisance may be expected to continue. In that case, the measure of damages for the nuisance, is the difference in the value of the property for a home with and without such odor. Jefferson Fertilizer Co. v. Rich, 182 Ala. 633, 62 So. 40; Mobile & Ohio R.R. Co. v. Turner, 209 Ala. 667, 96 So. 707.

■ The appellants insist that the witness, Leon F. McGinnis, was not shown to be qualified as an expert to testify about the market value of the appellants' property. A witness who undertakes to speak in regard to the value of a piece of land need not be an expert. Adler & Co. v. Pruitt, 169 Ala. 213, 229, 53 So. 315. If he has given special attention to land values and has had an uncommon occasion to know them, he should be able to say, at least, what his opinion as to the value of a particular tract of land is, provided, of course, he shows a means of knowledge about the tract in question. This witness had lived for twenty years in Springville, which is at the other end of the road running from Oneonta on which appellees' property is located. He had traveled this road on occasions and knew appellees' property. He was a farmer, a licensed land surveyor, and had been licensed as a real estate broker for four years. His home was in St. Clair County, but in sight of Blount County. He was familiar with the property in Blount County. He had surveyed extensively in southern Blount County in his field of land sales, and he had appraised lands in Blount County, in the southern part of which he was familiar with the sales of small tracts. He had sold twenty-seven tracts in St. Clair County the previous year, about twenty the year before, and about the same number the year before that, all of various areas. The majority of the land was in northern St. Clair with a great deal of it comparable to the southern Blount County farmland. The witness inspected the appellees' property and made his appraisal of it. He formed an opinion as to its market value both before and after the hog parlor operation was instituted. This witness was properly and sufficiently qualified to testify as to value, and his testimony on the subject was admissible. Shelby County v. Baker, 269 Ala. 111, 110 So.2d 896. Evidence that this witness was hired to appraise the property, to which the appellants objected, had probative value and was admissible, because it shows, for one thing, why the witness made the appraisal, and it also shows the appellees'

quest for evidence with which to inform the court on the issue of their damages.

■ The appellants objected to the court's permitting the appellees' solicitor to examine some of the health authorities, who were witnesses, about two reports of tests for contamination in two samples of water. There was no legal evidence that these samples came from the appellees' property, nor was there evidence that the report concerned the water samples or bore any authenticity as to its origin. The witnesses were asked in substance if the report that was handed them showed any sort of pollution. Whatever though may be the grounds of objection to this testimony, the trial judge's adverse ruling was harmless, because, in his final decree, he made no finding for the appellees with reference to stream pollution. He stated that he could not say the stream was· polluted, the evidence on the question being unsatisfactory, and he held that the appellees had not proved pollution of the stream. The appellants recognize this and state as much in their brief. Therefore the appellants have nothing to complain about since there was no decree against them on this point. Unless adverse rulings injuriously affected substantial rights, we will not reverse the decree of the trial court, for the error is harmless. Supreme Court Rule 45, Code of Alabama, 1940, Tit. 7, Appendix; Lightsey v. Stone, 255 Ala. 541, 52 So.2d 376; Roubicek v. Roubicek, 246 Ala. 442, 21 So.2d 244.

■ On the single ground that he was not qualified, the appellants objected to James Carl McClendon, a witness for appellees, expressing his opinion or judgment as to what could be done to help the odor situation allegedly created by the operation of the hog parlors and lagoons. This witness was superintendent of a concern which installed rendering plants and was familiar with the operation of lagoons, used to control odors and wastes. He had been in the business about seven years and

had personally supervised such installations. He testified that the odor from the hog parlor lagoons was caused by fermentation of the manure, and that basically the same principle is involved in his business, the difference being that slaughter houses have more fat stuff in the waste disposals than hog parlor lagoons, which, in fact, causes an even greater odor than comes from hog parlor lagoons. In our opinion enough similarity was shown between the two operations to justify the court's concluding that this witness was qualified to express his· opinion as to what could be done to correct the situation caused by the odor.

In Alabama Consolidated Coal & Iron Co. v. Heald, 168 Ala. 626, 643, 53 So. 162, 167, the following statement appears:

"To entitle a witness to answer as an expert, it is true 'he must, in the opinion of the court, have special acquaintance with the immediate line of inquiry; yet he need not be thoroughly acquainted with the differentia of the specific specialty under consideration. If this were necessary, few experts could be admitted to testify; certainly no courts could be found capable of determining whether such experts were competent. A general knowledge of the department to which the specialty belongs would seem to be sufficient.' 1 Whart. on Ev. (2d Ed.) p. 386, § 439; Washington v. Cole, 6 Ala. 212; Gulg City Ins. Co. v. Stephens, 51 Ala. 121, 123. Furthermore, the sufficiency of Steele's experience and knowledge of the subject inquired about was a matter addressed to the discretion of the court, and the ruling in respect thereto should not be here disturbed unless it clearly appears to have been erroneous. Authorities (sic) supra. See, also, Parrish's Case, 139 Ala. 16, 42, 36 So. 1012; Braham's Case, 143 Ala. 28, 41, 38 So. 919. * * *"

To the above authority we add Louisville & Nashville R.R. Co. v. Lovell, 196 Ala. 94, 71 So. 995; Pope v. Ryals, 232 Ala.

260, 262, 167 So. 721; Gast v. State, 232 Ala. 307, 167 So. 554; Independent Life and Accident Ins. Co. of Jacksonville, Florida v. Aaron, 282 Ala. 685, 213 So.2d 847, and Louisville & Nashville R.R. Co. v. Vickery, 288 Ala. 555, 560, 263 So.2d 656.

■ There was no error in sustaining the appellees' objection to the following question propounded to the witness Ralph Hunt, viz:

"Mr. Hunt, in your observations of Mr. Bottcher's operation out there, did you consider that, did you or did you not consider that it met the sanitary standards for similar operations?"

The question can be construed as inferring that the appellants' operation "met the sanitary standards for similar operations" and asks if the witness considered that. It assumes a fact that is not in evidence. Further, there was no evidence as to what the sanitary standards for similar operations were, nor that the witness was familiar with the sanitary standards for similar operations, if, in truth, there were any.

■ Moreover, assuming that the appellants' operation met some set of sanitary standards for similar operations, this would not affect the appellees' right to equitable relief, because the issue is not whether the appellants were negligent, Alabama Power Co. v. Stringfellow, 228 Ala. 422, 153 So. 629; Southern Ry. Co. v. Robertson, 16 Ala.App. 155, 75 So. 831, or their business lawful, but whether or not from the inherent qualities of the business, or the manner in which it is conducted, it directly causes substantial injury to the properties of the appellees, or produces material annoyance and inconvenience to them in the comfortable enjoyment of their home. English v. Progress Electric Light & Motor Co., 95 Ala. 259, 10 So. 134.

■ The appellants have not argued assignments of error 4, 8, 11, 15, 16, 17, 22, 23, 25, 28, 30, 38, 40, and 41. These will be deemed waived and have not been con-

sidered by the court in view of Rule 9, Revised Rules of Practice in the Supreme Court, Appendix to Title 7, Code of Alabama, Recompiled 1958.

■ In the case of assignments 18, 31, and 33, the appellants' objection came after the witness had made a responsive answer to the question, and hence was too late, Allison v. Owens, 248 Ala. 412, 27 So.2d 785; Posey v. St. Clair County, 270 Ala. 110, 116 So.2d 743; Salter v. Cobb, 264 Ala. 609, 88 So.2d 845; Madison Highlands Development Co. v. Hall, 283 Ala. 333, 216 So.2d 724; Meriwether v. Crown Investment Corp., 289 Ala. 504, 268 So.2d 780.

■ In the case of assignments 19, 20, 21, 24, 27, 29, 31, 32, 33, 34, 36, 42, and 43, the objection was general, with no specific ground or grounds being assigned for the objection, and the evidence elicited was not patently inadmissible. No reversible error is present. Tankersley v. Webb, 263 Ala. 234, 82 So.2d 259; Chandler v. Goodson, 254 Ala. 293, 48 So.2d 223; All American Life and Casualty Co. v. Dillard, 287 Ala. 673, 255 So.2d 17.

■ In the case of assignments 20, 21, 32, 37, and 42, the question objected to went unanswered by the witness, wherefore the court will not be reversed because of its adverse ruling. Allison v. Owens, 248 Ala. 412, 27 So.2d 785; Madison Highlands Development Co. v. Hall, supra; Orton v. Gay, 285 Ala. 270, 231 So.2d 305; Brooks v. Everett, 271 Ala. 354, 124 So.2d 105; Southern Electric Generating Co. v. Leibacher, 269 Ala. 9, 110 So.2d 308.

■ Assignments of error 20, 25, and 29 also raise objection to allowing the appellees to propound leading questions. Such matters are largely within the discretion of the trial court, and unless this discretion is abused, which we do not find to be the case, the ruling will not be reversed. All American Life and Casualty Co. v. Dillard, 237 Ala. 673, 681, 255 So.2d 17; McLaney v. Turner, 267 Ala. 588, 104 So.

**54**

■■■■■■■■■■■■■■■

2d 315; Salter v. Cobb, 264 Ala. 609, 88 So.2d 845; Kay-Noojin Development Co. v. Kinzer, 259 Ala. 49, 65 So.2d 510.

■■■ No objections were interposed to the admission of the testimony elicited by the trial judge himself. This is the subject of assignments 35 and 37. We find no reversible error in his questioning the witness. Barnett v. Barnett, 268 Ala. 621, 109 So.2d 717.

■■■ Some of the assignments, viz, 21, 30, 32, 33, 37, and 42, going to the admission of evidence, contain several questions that were propounded to the witness. Separate rulings were made and are referred to in a combined way. In American Casualty Co. of Reading, Pa. v. Devine, 275 Ala. 628, 634, 157 So.2d 661, 666, this court, citing Anderson v. Smith, 274 Ala. 302, 303, 148 So.2d 243, and Supreme Court Rule 1 said:

"Assignment 11 pertains to at least five rulings on admission of evidence over defendant's objection. These rulings are referred to in a combined general way and by reference to the pages of the record where such rulings may be found. Such an assignment is not sufficient to invite review because the assignment does not state concisely the error complained of. * * *" See also International Bro. of Teamsters, Etc. v. Hatas, 287 Ala. 344, 366, 252 So.2d 7.

For the reasons stated above, the several assignments of error mentioned do not invite our attention to the issues sought to be reviewed by them.

Having considered those issues that have been sufficiently raised in the appellants' assignments of error and argued by them, and finding no error, we affirm the final decree of the trial court.

Affirmed.

HEFLIN, C. J., and COLEMAN, BLOODWORTH and JONES, JJ., concur.