PER CURIAM.
This is an appeal from a judgment that permanently enjoins defendants, Southwestern Construction Company, Inc., and John H. Kuglar, from conducting a sand excavation operation and related business on land owned by them and located in Baldwin County. The land in question is part of a subdivision which fronts the Gulf of Mexico and is adjacent to Perdido Pass. A sketch of it is appended to this opinion.
The Gulf’s beach runs horizontally from west to east. Lots run perpendicularly to the beach front and are, from west to east, designated by numbers 1 to 6. The defendants own lots 2 and 3. Plaintiff V. A. Liberto owns lots 4 and 15. Plaintiff Rosa-mond Tarplay owns lots 5 and 6. The owner of lot 1 is not a party to this action. As shown in the sketch, lot 15 lies above lot 3, separated by Gulf Road, which runs parallel to the beach adjacent to the north end of lots 1 through 6. There is a ten foot wide walkway between lots 3 and 4 which runs from Gulf Road to the beach, giving landowners who own land across Gulf Road access to the beach.
As shown, a spoil easement runs across all the lots at approximately half the depth of the lots. That easement gives the Army Corps of Engineers the right to enter the land and, among other things, to dump and remove spoil which accumulates from dredging operations the Corps periodically conducts in Perdido Pass. The lots are also subject to the following restrictive covenant:
“No noxious or offensive trade or activity shall be carried [on] upon any of the said lots, nor shall anything be done thereon which may be or may become a nuisance or annoyance to the neighborhood * * *.”
Defendants began their excavating in April 1978, selling sand to at least five different contractors and utilizing one diesel front end loader. The contractors who bought sand from defendants picked it up in their own dump trucks using defendants’ front end loader to load them. The sand was transported along Gulf Road, the entrance road, and the state highway. The excavation site is entirely on defendants’ property, and measured at the pit’s widest points is approximately 300 feet by 150 feet.
This action was brought by plaintiffs against defendants, seeking damages and injunctive relief, alleging that defendants’ activity was a private nuisance and that it violated the restrictive covenant. Defendants answered that use of their land was reasonable so that the activity did not constitute a private nuisance and that the restrictive covenants had been extinguished *635 because the Corps’ activities changed the character of the neighborhood. The case was tried ore terms and injunctive relief accorded plaintiffs, the judgment holding that defendants’ activity constituted a private nuisance and violated the restrictive covenant. Nuisances are defined in the Code:
“A ‘nuisance’ is anything that works hurt, inconvenience or damage to another. The fact that the act done may otherwise be lawful does not keep it from being a nuisance. The inconvenience complained of must not be fanciful or such as would affect only one of a fastidious taste, but it should be such as would affect an ordinary reasonable man." § 6-5-120, Code 1975.
“Nuisances are either public or private. A public nuisance is one which damages all persons who come within the sphere of its operation, though it may vary in its effects on individuals. A private nuisance is one limited in its injurious effects to one or a few individuals. Generally, a public nuisance gives no right of action to any individual, but must be abated by a process instituted in the name of the state. A private nuisance gives a right of action to the person injured.” § 6-5-121, Code 1975.
Finding either the existence of a private nuisance or a violation of the restrictive covenant is sufficient to support injunctive relief and injunction is a proper remedy to abate a private nuisance. Baldwin v. McClendon, 292 Ala. 43, 50, 288 So.2d 761 (1974). If a restrictive covenant is clear and unambiguous, effect will be given its manifest meaning. Springdale Gayfer’s Store Co. v. D. H. Holmes Co., Ltd., 281 Ala. 267, 277, 201 So.2d 855 (1967). In either case, our standard of review is the same. A determination made by the trial court, when evidence is taken ore tenus, is favored with a presumption of correctness and will not be disturbed on appeal unless plainly erroneous or manifestly unjust, especially where, as was done in this case, the trial judge has made a personal inspection of the premises. Balwin, supra, at 49, 288 So.2d 761; Laney v. Early, 292 Ala. 227, 234, 292 So.2d 103 (1974).
Defendants contend that under the terms of the spoil easement, the Army Corps of Engineers could enter the property to either deposit or remove spoil, that in removing the spoil the Corps would have the authority to use bulldozers and dump trucks, that the Corps could not be lawfully enjoined from removing spoil, and because the Corps could not be lawfully enjoined from excavating the spoil neither can defendants. Defendants further contend the land is subject to the easement and that activity conducted within the terms of the easement, no matter who conducts it, is not an unreasonable use that can constitute a nuisance. Moreover, they contend the Corps has the authority to contract with defendants for the latter to do exactly what they were already doing; the fact that there is no express approval by the Corps should make no difference. Finally, defendants contend the dredging operations and the easement have so changed the character of the land as to extinguish the restrictive covenants.
Plaintiffs concede the land is subject to the Corps’ easement and the Corps may enter all the property subject to the easement to either deposit or remove spoil. However, plaintiffs contend that because the easement affects only the south half of the lots, the Corps has no legal right to enter from the north half or to use the entrance road and Gulf Road in transporting the sand. They contend the Corps would be required to remove the spoil by way of the Gulf; for example, by barge.
We have no occasion here to hold that the Corps is operating outside the terms of the easement granted it. Since the Corps is not conducting the activity that question is not before us. We do hold, however, that the Corps’ easement did not devolve to defendants. The easement was granted to the Corps, not to defendants, *636 and defendants may not claim any rights under it.
Defendants are therefore left with the sole contention that the easement and dredging operations have so changed the character of the land as to make defendants’ activity a reasonable use of the property and extinguish the restrictive covenant. We cannot agree. There was testimony which indicated the Corps had dredged only five times from 1970 to 1978, and, that when it did dredge, it did not use the type equipment used by defendants when excavating. There were no dump trucks, no noise, no vibration, no odor, no sand strewn over all the property, and no deterioration of the roads, as the evidence discloses was the case when defendants excavated. In fact, when the Corps dredged, spoil from Perdido Pass was forced by water through pipes onto the beach; the water drained back into the Gulf leaving white sand behind. The activity of the Corps and that of defendants are quite different. The Corps’ activity was, and is, permitted by a valid easement. Defendants’ was not. The Corps’ activity was intermittent; defendants’ in comparison, was continuous.
The trial court, in this case, heard the evidence ore tenus and made a personal inspection of the excavation site. There is evidence to support its decree and it will not be reversed. Baldwin and Laney, supra. There was evidence that this area was principally a recreational community; that defendants were using heavy equipment, with accompanying noise and vibrations which prevented residents from sleeping; that there was a noxious odor emitted by the diesel operated equipment used in the excavation activity which could be smelled inside plaintiffs’ homes; that sand was kicked up and blown by the wind onto the adjacent lots; that sand blew off the trucks when they left the excavation pit; that Gulf Road and the entrance road from the state highway were deteriorating severely because of the heavy equipment using them; that the trucks sometimes blocked the roads and prevented residents from using them; that the activity was continuous from April to August; that the activity was conducted from as early as 7:00 A.M. to as late as 7:00 P.M.; and that defendants’ activity interfered with plaintiffs’ enjoyment of their property and with their view of the Gulf. In the face of this evidence, we cannot say the trial court’s holding that defendants’ activity was a private nuisance, and that it violated the restrictive covenant, was clearly erroneous or manifestly unjust.
Defendants contend the trial court erred in failing to apply the comparative injury rule to find there was not a nuisance. As is well known, the comparative injury rule employs a balancing test to weigh the injury that may accrue to one or to the other of the parties, and to the public, by granting or refusing the injunction. Pritchett v. Wade, 261 Ala. 156, 73 So.2d 533 (1954). Defendants contend the service they are providing to the public at large (saving tax money the Corps would have to spend to do exactly what defendants are doing) and the detriment to them from enjoining their activity outweigh any detriment to plaintiffs.
However, plaintiffs correctly rebut this argument by pointing out that the comparative injury rule does not arise until after there has been a finding that a nuisance exists. Once the trier of fact determines that a nuisance does indeed exist, a balancing test must be employed to determine whether injunction is a proper remedy. The comparative injury rule is not employed, as defendants suggest, to determine whether a nuisance does, in fact, exist.
For the foregoing reasons, the judgment below is due to be, and is hereby, affirmed.
AFFIRMED.
TORBERT, C. J., and FAULKNER, AL-MON, SHORES and EMBRY, JJ„ concur.

*637