388 So.2d 190 (1980)
William R. INGRAM
v.
OMELET SHOPPE, INC.
William R. INGRAM
v.
R. Merritt ROGERS et al.
William R. INGRAM
v.
R. Merritt ROGERS, Omelet Shoppe, Inc., an Alabama Corp., Ben C. Power and Russell H. Stanley.
79-237, 79-307, 79-442.
Supreme Court of Alabama.
September 12, 1980.
*191 Erle Pettus, Jr. of Rives, Peterson, Pettus, Conway, Elliott & Small, Birmingham, and Julian D. Butler of Butler & Potter, Huntsville, for appellant.
Thomas C. Najjar, Jr. of Najjar & Najjar, Birmingham, for appellee Omelet Shoppe, Inc.
J. Vernon Patrick, Jr. and Gary S. Marx of Berkowitz, Lefkovits & Patrick, Birmingham, for appellee R. Merritt Rogers.
Charles E. Clark of Carlton, Boles, Clark, Stichweh & Caddis, Birmingham, for appellee Russell Stanley.
B. G. Minisman of Fulford, Pope & Minisman, Birmingham, for appellee Ben C. Power.
PER CURIAM.
Appellant appeals from three final orders of a consolidated action in Jefferson County Circuit Court. The orders (1) approved a resolution providing for a combined issue of Omelet Shoppe, Inc. (OSI), debt obligations and stock; (2) adjudged plaintiff-appellee Rogers to be the owner of certain stock which appellant-defendant Ingram orally agreed to sell him and enjoined Ingram from interfering in any way with co-defendant OSI's business; and (3) ordered Ingram to pay OSI a money judgment pursuant to an accounting cross-claim filed by OSI against Ingram and to pay compensation to a court-appointed special master. We affirm.
The struggle for control of OSI began at a meeting on July 31, 1979, when plaintiffappellee Rogers and one Ben Power voted *192 to remove their co-director, defendant-appellant Ingram, as president of OSI. Rogers and Power then elected Rogers as president. Ingram, the majority stockholder of record at the time, notified Rogers of his intention to call a stockholder's meeting of OSI for August 10, 1979. Ingram owned enough stock to elect his own slate of directors and then to reelect himself as president. On August 6, 1979, Rogers individually filed the present action in the Circuit Court of Jefferson County.
Primarily, Rogers's complaint alleged that Ingram used false representations concerning the financial statement of OSI to induce Rogers to make loans to the corporation and to become a guarantor of indebtedness of the corporation. Rogers alleged that the corporation is now on the verge of bankruptcy due to Ingram's mismanagement and waste. Furthermore, Rogers complained that Ingram induced him to make, out of his personal funds, an unsecured loan of $300,000 to OSI in consideration of Ingram's oral promise to deliver to Rogers an additional ten per cent stock interest in OSI out of Ingram's own holdings of that stock.
Rogers sought a temporary restraining order and permanent injunction to enjoin Ingram from interfering with OSI's business affairs, causing the August 10, 1979, stockholders meeting to be held, voting or disposing of the ten per cent interest allegedly sold to Rogers, and acting as an OSI director. Rogers also sought specific performance of the oral contract between himself and Ingram. Rogers named OSI as a defendant in his complaint and asked for judicial authorization to make loans to OSI. The trial court issued the temporary restraining order on August 6, 1979, and authorized OSI to borrow money from Rogers.
On September 27, 1979, upon motion of OSI, the trial court entered a final order approving a resolution passed by the OSI board authorizing an issue of its debt obligations and stock to raise money for payment of the debt owed to particular investors, to pay off some of the money owed to Rogers, and to provide working capital.
After a trial on the merits from October 8-11, the trial court on November 1, 1979, entered an order and decree adjudging Rogers to be the owner of the disputed ten per cent stock interest and permanently enjoining Ingram from interfering with OSI's business.
On that same day, OSI amended its answer to cross-claim for an accounting and for the same type of injunctive relief against Ingram that Rogers sought. The trial court entered a money judgment on the accounting claim against Ingram based on a special master's report.

I. VENUE
The initial issue on this appeal is Ingram's defense of improper venue. We hold that Jefferson County was the proper place of venue as to Ingram and OSI.
Rule 82, ARCP, provides in part:
(b) Venue of Actions. Venue of actions shall not be affected by these rules except as the statute for venue for actions against individuals at law (Tit. 7, § 54) and the statute for venue for actions against individuals in equity (Tit. 7, § 294) are inconsistent. Such inconsistencies are resolved as follows:
(1) Against Resident Individuals. Actions against an individual or individuals having a permanent residence in this state:

(A) Must be brought in the county where the defendant or any material defendant resides at the commencement of the action, except that if the action is a personal action other than an action on a contract, it may be brought either in the county where the act or omission complained of occurred, or in the county of the permanent residence of the defendant or one of them; . . . [Emphasis added.]
The record discloses that Ingram, the individual defendant, resided in Shelby County at the commencement of this action.
Rule 82(b) applies only to individuals, not to corporations or other entities.
Code of Ala. 1975, § 6-3-7, the corporation venue statute, provides:

*193 A foreign corporation may be sued in any county in which it does business by agent, and a domestic corporation may be sued in any county in which it does business by agent or was doing business by agent at the time the cause of action arose; provided, that all actions against a domestic corporation for personal injuries must be commenced in the county where the injury occurred or in the county where the plaintiff resides if such corporation does business by agent in the county of the plaintiff's residence. [Emphasis added.]
The record reveals that OSI, the corporate defendant, was doing business in Jefferson County at the commencement of this action.
Venue, as distinguished from jurisdiction, is a legislative determination based upon the presumed convenience of the parties. See Boswell v. Citronelle-Mobile Gathering, Inc., 292 Ala. 344, 294 So.2d 428 (1974). "The burden of proving that venue is improper in a county in which suit is filed is upon the party making such claim." Medical Service Administration v. Dickerson, 362 So.2d 906, 909 (Ala.1978). Plaintiff Rogers filed the present action in Jefferson County, the principal place of business of OSI. Substantially all the facts involved in this litigation occurred in Jefferson County. Defendant Ingram argues that venue was proper only in Shelby County. We cannot agree.
Appellee Rogers contends, and we agree, that by looking solely at Ingram as a defendant, Jefferson County is the proper place of venue since the acts complained of against Ingram occurred therein. Rogers bases his contention on that part of Rule 82(b)(1)(A), ARCP, which provides "if the action is a personal action other than an action on a contract, it may be brought. . . in the county where the act or omission complained of occurred, . . ." (Emphasis added.)
Despite being founded in equity, Rogers's prayer for injunctive relief and specific performance in this case is nonetheless "personal." A "personal action" is an action in personam. It seeks to enforce an obligation imposed on the defendant by his contract or delict; that is, it is the contention that he is bound to transfer some dominion or to perform some service or to repair some loss. Black's Law Dictionary 50 (4th ed. Rev. 1968). That equity acts "in personam" is a basic axiom of our jurisprudence. Lyle v. Haskins, 24 Wash.2d 883, 168 P.2d 797. Once venue is properly established against Ingram in Jefferson County, the same is likewise accomplished against OSI under 82(c), ARCP. That section reads in part: "Where several claims or parties have been joined, the suit may be brought in any county in which any one of the claims could properly have been brought. . . ."

II. THE TRIAL COURT'S T.R.O.
Appellant alleges that in the absence of OSI as an indispensable party plaintiff, the temporary restraining order issued against Ingram on August 6, 1979, was an abuse of discretion which was further compounded by the trial court's refusal to dissolve said order. This contention is without merit.
The granting of a temporary injunction rests largely in the discretion of the trial court. Southern Rock Products Co. v. Self, 279 Ala. 488, 187 So.2d 244 (1966). The trial court's latitude in this area is considerable. Drake Associates, Inc. v. Letson, 277 Ala. 512, 172 So.2d 536 (1965). At the time the temporary restraining order was issued, OSI was on the verge of bankruptcy. (R. at pp. 1639-1943).
Plaintiff Rogers was president, a creditor and a guarantor of OSI. Defendant Ingram conceded in his appellate brief that plaintiff Rogers had standing to request that defendant OSI be placed in receivership.
The decision to appoint a receiver or take some less drastic action is within the sound discretion of the trial court. See, e. g., Hunter v. Parkman, 250 Ala. 312, 34 So.2d 221 (1948). As recognized by this Court in Hunter, the decision to order a receiver must be "based upon the fact that there is no other adequate remedy or means of accomplishing the desired objects of the *194 judicial proceeding." 34 So.2d at 224, quoting Warren & Co. v. Pitts, 114 Ala. 65, 68, 21 So. 494 (1897).
In the present action, there was another adequate remedy available, the issuing of the temporary restraining order. Such action was a less drastic remedy, concomitant with the equity court's power to order the more drastic remedy of receivership. Accordingly, the trial court had the power to issue the T.R.O. See Cherry Investment Corp. v. Folsom, 273 Ala. 575, 143 So.2d 181 (1962) (minority shareholders obtained injunction to prevent stockholders meeting of a failing corporation).
Independent of plaintiff Rogers's standing to request the trial court to appoint a receiver (or to take lesser and included temporary measures), he also had standing to request the T.R.O. due to his status as a guarantor and creditor of OSI.
Appellant's assertion that the status of OSI, as a defendant, precludes the issuing of the temporary restraining order is unsupported by legal authority and unpersuasive as dictum.

III. THE RESOLUTION BY OSI'S BOARD OF DIRECTORS
Appellant opposes the September 27, 1979, resolution of OSI's board of directors offering securities in the corporation as an invalid exercise of the board's power. Such assertion lacks substance.
At the time defendant Ingram was removed as president and chief executive officer of defendant OSI, the corporation was in dire need of working capital. To help alleviate this situation, the corporation offered (via a resolution of its board of directors) securities in $1,200 units consisting of 100 shares of the capital stock of OSI at $2 per share and $1,000 unsecured debt obligations of the company offered at par payable ten years from the date of issuance, bearing interest at eight per cent per annum.
Contra to appellant's assertions, the board of directors' resolution expresses their concern for the stockholders' preemptive rights:
With respect to the preemptive rights of persons claiming to be stockholders of the Company as to whom the number of shares owned or the ownership of stock is in dispute, each person claiming such ownership may tender to the Company c/o its counsel a subscription (in form satisfactory to counsel for the Company), together with payment, and the question of the number of shares owned and the ownership of stock of the Company for purpose of exercising preemptive rights shall be resolved in the first instance by the Company's counsel, provided, however, that any one who is dissatisfied with said counsel's determination may submit the issue to Honorable William C. Barber, Circuit Judge in Equity, for resolution, and provided, further, that pending final resolution of the issues of the number of shares owned and the ownership, the Company's counsel shall retain and invest the funds tendered in an escrow account. [R. at p. 187.]
Additionally, OSI's board of directors' action in issuing securities of the company on September 27, 1979, was validly accomplished despite the board's "holdover" status.
The Code of Ala.1975, § 10-2-130(b), provides:
An annual meeting of the stockholders shall be held at such time as may be provided in the bylaws. Failure to hold the annual meeting at the designated time shall not work a forfeiture or dissolution of the corporation.
Section 9 of OSI's bylaws provides:
[E]ach director shall be elected to serve until his successor shall be elected and shall qualify.
Fletcher in Private Corporations § 344 provides:
Directors, trustees, or other officers of a corporation, elected or appointed for a certain time, hold over after the expiration of their term until their successors are elected or appointed. . . .
It is well established that:

*195 This right [preemptive right] is subject to all reasonable conditions imposed by the Corporation's Board of Directors. It must be exercised promptly. No stockholder can be compelled to take additional shares; and no stockholder is entitled to any additional shares except upon payment of the full purchase price fixed by the Corporation in its offer to him.
People v. Graves, 265 App.Div. 94, 37 N.Y. S.2d 900, aff'd, 290 N.Y. 785, 50 N.E.2d 108 (1942).
Under the exigent circumstances, the notice to appellant Ingram (September 24 notice and sale on October 1) was adequate. See Coleman v. LaSalle Creosoting Co., 129 So.2d 311 (La.App.1961) (sustained sale on seven days' notice).

IV. APPELLANT'S ORAL CONTRACT AND RIGHT TO A JURY TRIAL
Article I, Section 11 of the Constitution of Alabama of 1901, provides for a jury trial only in those classes of cases in which a right existed at common law. Tillery v. Commercial Nat. Bank of Anniston, 241 Ala. 653, 4 So.2d 125 (1941).
Rule 39(a) of the Alabama Rules of Civil Procedure states:
When trial by jury has been demanded as provided in Rule 38, the action shall be designated upon the docket as a jury action. The trial of all issues so demanded shall be by jury, unless . . . (2) the court upon motion or of its own initiative finds that a right of trial by jury of some or all of those issues does not exist under the Constitution or statutes of this state.
The court below has granted only equitable relief, enjoining Ingram from performing certain acts detrimental to OSI and ordering specific performance of a contract by ordering the assignment of certain stock certificates to the plaintiff Rogers. Additionally, it authorized the sale of OSI securities and ordered an accounting.
In defendant Ingram's Motion to Strike, he requested a "jury trial of the legal issues remaining in the Complaint after striking such allegations which are immaterial, impertinent or scandalous."
Appellant's request for a jury trial in his Motion to Strike does not preclude the waiver of that request. In Elwood-Gladden Drainage Dist. of Doniphan County v. Ramsel, 206 Kan. 75, 476 P.2d 696 (1970), the Kansas Supreme Court held that appellant had waived his previous demand for trial by jury. The Court said:
The general rule is that the waiver may be by any conduct or acquiescence inconsistent with an intention to insist on a jury trial. 24 Cyc. 154. The plaintiffs are presumed to have known their rights, and having failed to assert them at the proper time they cannot be heard to do so now.
476 P.2d 700, quoting Cunningham v. City of Iola, 86 Kan. 86, 199 P. 317 (1911).
Counsel for appellant Ingram did not object to the absence of a jury during the trial of this case and should not be permitted to re-try the case simply because he is dissatisfied with the result reached by the trial judge.
The evidence is undisputed that appellant's oral contract with appellee Rogers for the sale of OSI stock was never reduced to writing. Under § 7-8-319, Code of Ala. 1975, an oral agreement for the sale of stock is frequently unenforceable. That section reads:
A contract for the sale of securities is not enforceable by way of action or defense unless:
(a) There is some writing signed by the party against whom enforcement is sought or by his authorized agent or broker sufficient to indicate that a contract has been made for sale of a stated quantity of described securities at a defined or stated price; or
(b) Delivery of the security has been accepted or payment has been made but the contract is enforceable under this provision only to the extent of such delivery or payment; or
(c) Within a reasonable time a writing in confirmation of the sale or purchase *196 and sufficient against the sender under paragraph (a) has been received by the party against whom enforcement is sought and he has failed to send written objection to its contents within 10 days after its receipt; or
(d) The party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract was made for sale of a stated quantity of described securities at a defined or stated price.
The trial court in its opinion rejected the application of the above-quoted section in the following portion of its decree:
Rogers fully performed his agreement with Ingram. Rogers borrowed $200,000 from BTNB and paid the $200,000 demand note held by Metro Bank on the same day or the day following Ingram's promise to give Rogers an additional 10% of the issued and outstanding stock of OSI. Rogers's performance took the agreement out of the Statute of Frauds. [R. at p. 228.]
See Code of Ala.1975, § 7-8-319(b); Endsley v. Darring, 249 Ala. 381, 31 So.2d 317 (1947).
We agree with the trial court that Rogers's full performance of his oral agreement with appellant took that contract out of the Statute of Frauds and was, accordingly, enforceable against Ingram.

V. OMELET SHOPPE'S INJUNCTIVE RELIEF AGAINST INGRAM
Appellant finally argues that the injunctive relief granted in favor of Omelet Shoppe against Ingram in the trial court's order of November 1, 1979, was improper due to Omelet Shoppe's position as a party defendant and its not being derivatively represented in Rogers's complaint. Again we disagree. The appellant cites no authority to support its charge, and we have found none. As a director of Omelet Shoppe, Inc., Ingram owed the corporation a fiduciary duty. See Johnston v. Livingston Nursing Home, Inc., 282 Ala. 309, 211 So.2d 151 (1968). The record is replete with evidence that Ingram breached this duty to both plaintiff Rogers and the corporation. We hold that the trial court's action in granting the temporary restraining order was not improper and cannot say that the permanent injunctive relief afforded Omelet Shoppe against Ingram was not within the bounds of propriety.
Both Rogers and OSI requested that the trial court enjoin Ingram from further actions detrimental to the corporation. Plaintiff Rogers also asked that the trial court "grant the plaintiff such other, further and different, general relief to which he may be entitled, the premises considered." This Court, in Baldwin v. McClendon, 292 Ala. 43, 288 So.2d 761 (1974), stated:
Under a prayer for general relief, a court of equity has power to mold its relief to meet the equities developed in the trial, Winslett v. Rice, 272 Ala. 25, 128 So.2d 94; Coleman v. Estes, 281 Ala. 234, 201 So.2d 391, that are consistent with the allegations of the bill. Owen v. Montgomery, 230 Ala. 574, 161 So. 816; Cox v. Cox, 267 Ala. 372, 102 So.2d 23. Where a court of equity assumes jurisdiction for injunctive relief, it will retain the bill for all purposes necessary to a complete determination and settlement of the matters involved, though they be purely of a legal nature. May v. Lowery, 214 Ala. 230, 107 So. 67.
288 So.2d 761, at 766.
We agree that the facts pleaded in plaintiff Rogers's Complaint and Supplemental Complaint, joined by defendant OSI and proved at trial, warranted the accounting heretofore mentioned against Ingram.
Rule 54(c) of the Alabama Rules of Civil Procedure expressly afforded the trial court authority to grant such an accounting in favor of OSI. That rule states in part:
[E]very final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings. [Emphasis added.]
The accounting was not a separate action for which Ingram was entitled to separate notice but simply "incidental to *197 the principal equity of the bill." May v. Lowery, 214 Ala. 230, 107 So. 67 (1925); Trammell v. Craddock, 100 Ala. 266, 13 So. 911 (1893). No special notice or cross-bill by OSI was required.
Likewise, defendant Ingram was denied no constitutional right by the court's action in granting the accounting.

VII. ROGERS'S RIGHT TO THE OSI STOCK PROMISED BY INGRAM
The trial court found that plaintiff Rogers was entitled to be declared the owner of 2,227.1 shares of OSI stock promised to him by defendant Ingram in consideration of Rogers's advancing OSI $200,000.
In Kubiszyn v. Bradley, 292 Ala. 570, 298 So.2d 9 (1974), this Court held that:
[O]ur oft-stated rule of review is that when the trial court has heard the evidence orally, its decree is favored with a presumption of correctness, which will not be disturbed on appeal unless plainly erroneous or manifestly unjust.
298 So.2d 9, at 14.
It is well settled that specific performance is appropriate to enforce a contract to sell stock in a corporation. Madison Limestone Co. v. McDonald, 264 Ala. 295, 87 So.2d 539 (1956); Boozer v. Blake, 245 Ala. 389, 17 So.2d 152 (1944).
A trial court's determination to grant specific performance should be upheld unless "palpably erroneous." Wray v. Harris, 350 So.2d 409 (Ala.1977).
The trial court in this action cannot be said to have abused its discretion in ordering specific performance.
We have carefully considered other arguments advanced for reversal, and find none which compel that result.
AFFIRMED.
MADDOX, JONES, ALMON, SHORES and EMBRY, JJ., concur.
TORBERT, C. J., and FAULKNER and BEATTY, JJ., dissent.
BEATTY, Justice (dissenting):
The majority contends that venue was properly established in Jefferson County. I cannot agree. I would hold that Shelby County, not Jefferson County, is the proper place of venue. Since I believe the dispositive issue should have been the issue of improper venue, I will not address the substantive issues raised by the parties.
Rogers contends that by looking solely at Ingram as defendant, Jefferson County is the proper place of venue since the acts complained of against Ingram occurred in that county. Rogers relies on the part of Rule 82(b)(1)(A), ARCP, which provides that "if the action is a personal action other than an action on a contract, it may be brought ... in the county where the act or omission complained of occurred ...."
The majority defined this claim as a "personal action." Assuming arguendo that Rogers had pleaded a "personal action" in some aspect, nevertheless Rule 82(b)(1)(A) expressly excepts from its permissive terms "an action on a contract ...." Here Rogers sought specific performance between himself and Ingram. That at least removes this case from the liberal venue provisions of Rule 82(b)(1)(A) and requires the suit to be held in the county of Ingram's residence, i. e., Shelby.
Since OSI, the corporate defendant, was doing business in Jefferson County at the commencement of this action, Rogers contends that venue was proper against OSI in Jefferson County.
It is clear that when venue is proper in two or more counties, the plaintiff has the election to choose the county in which to proceed. Medical Service Admin. v. Dickerson, Ala., 362 So.2d 906, 909 (1978). Ingram contends, however, that venue is proper in only one county, Shelby, because Rogers did not state any claim or seek any relief against OSI; and therefore, the resident county of OSI should not control the place of venue.
Careful examination of the relief prayed for by Rogers against OSI is necessary to *198 determine whether an actual controversy exists between those two parties. Paragraph 9 of the prayer for relief of the original complaint states:
9. Authorizing the plaintiff to make such loan to the defendant OSI as may be necessary to enable it to carry on and conduct its business, the plaintiff offering to lend to the said corporation a reasonable amount of such money immediately with only such security as OSI can give; granting and authorizing OSI to borrow such money from the plaintiff and giving the plaintiff such security interest in and to its assets as it may be able to give, subject to valid and existing liens thereon and pledges thereof, the plaintiff offering so to do for no consideration other than a rate of interest no greater than OSI would be charged by a bank if such a loan were obtainable from a bank.
It is clear that Rogers's request for judicial approval of future loans from Rogers to OSI states no case or controversy. Paragraph 11 of the prayer for relief states:
11. Grant the plaintiff such other different, general and interim equitable relief to which the plaintiff may be entitled or the Court may deem appropriate in the premises.
This prayer for general relief is not sufficient to justify the conclusion that Rogers sought any affirmative relief from OSI.
If Rogers had filed his complaint solely against OSI as defendant on the basis of the quoted allegations in paragraphs 9 and 11, the trial court, upon motion by OSI under Rule 12(b)(6), ARCP, would have been obliged to dismiss the action for failure to state a claim upon which relief could be granted. Paragraph 9 expresses no adversary position. Paragraph 11, at best, expresses some hypothetical or future controversy. Allegations which merely show that the plaintiff anticipates a particular controversy are insufficient to invite a judicial declaration of rights. Smith v. Alabama Dry Dock & Shipbuilding Co., 293 Ala. 644, 651, 309 So.2d 424, 429 (1975).
In Rogers's supplemental complaint he prays that the court:
12. Issue a declaratory judgment, declaring and adjudging that the Notes, Deeds of Trust, Security Agreements, and Pledges of Stock, executed by Omelet Shoppe, Inc., and by R. R. & P. Restaurant Equipment Sales, Inc., together with financing statements executed on behalf of Omelet Shoppe, Inc., and its subsidiary, R. R. & P. Restaurant Equipment Sales, Inc., are valid and binding obligations of Omelet Shoppe, Inc.
13. Declar[e] and adjudg[e] that the acts of management and the Board of Directors of Omelet Shoppe, Inc. since the filing of this action are valid.
Significantly, the basis for the above prayer for relief comes from paragraph 33 of Rogers's supplemental complaint in which he claims that:
33. There is an actual and justiciable controversy between the parties, in that the Plaintiff Rogers contends that the Notes, Deeds of Trust, Security Agreements, and other documents executed by Omelet Shoppe, Inc. and its subsidiary, R. R. & P. Restaurant Equipment Sales, Inc., which were approved by Thomas C. Najjar, attorney for Omelet Shoppe, Inc., are valid, but the Defendant Ingram apparently contends that such Security Agreements are not valid, notwithstanding the fact that they were made pursuant to this Court's Order. [Emphasis added.]
If there is a justiciable controversy over the validity of the documents executed by OSI, the controversy is between Rogers and Ingram, not between Rogers and OSI, whom Rogers purported to sue.
Additional facts which establish that Rogers and OSI were not antagonistic to one another is found in the cross-claim filed by OSI against Ingram in which OSI adopted all but one of the allegations asserted by Rogers against Ingram. The allegation which OSI did not adopt concerned the contract claim between Rogers and Ingram. Obviously, OSI had no interest in that claim and, hence, did not adopt it. Furthermore, OSI joined with Rogers in asking the trial judge for a contempt charge against Ingram *199 for his alleged disobedience of the temporary restraining order. Thus, OSI appears to be united with Rogers, the president of OSI, rather than opposed to him.
Notwithstanding the lack of adversariness between Rogers and OSI, if Rogers had sued derivatively, OSI would be properly named as a defendant. American Life Ins. Co. v. Powell, 262 Ala. 560, 80 So.2d 487 (1955) (corporation is properly made defendant in stockholder's derivative action). It is not disputed, however, that Rogers did not meet the requirements for filing a derivative action. See Rule 23.1, ARCP.
The obvious conclusion is that Rogers did not state a valid claim against nor seek any relief from OSI. The right to proceed against OSI and Ingram in the resident county of OSI (Jefferson) is contingent upon the premise that:
Where there are several defendants and the residence of one is made determinative of the venue of the action, the complaint must state a cause of action against the said defendant; it must show that the resident defendant has an interest antagonistic to the plaintiff and the resident defendant must be a party against whom relief is sought. Ex parte Morton, 261 Ala. 581, 75 So.2d 500. The resident defendant must be a real and bona fide defendant whose interest in the result of the action is adverse to that of the plaintiff with respect to the cause of action against the other defendant. 56 Am.Jur., Venue, § 30; 92 C.J.S. Venue § 96. [Copeland v. Loeb, 269 Ala. 295, 297, 112 So.2d 475, 477 (1959).]
Thus, a defendant cannot control venue when he has no interest antagonistic to that of the plaintiff. Alabama Youth Serv. Bd. v. Ellis, Ala., 350 So.2d 405 (1977). This rule is necessary to prevent plaintiffs from joining parties as defendants for the sole purpose of defeating transfer of venue. But since OSI had no interest antagonistic to Rogers, venue cannot be controlled by OSI's presence in Jefferson County.
Ingram's defense of improper venue was timely raised in his answer (responsive pleading). See Rule 12(b), ARCP. Rogers contends, however, that Ingram waived the defense by (1) failing to present the defense to the court at any time subsequent to his responsive pleading, and (2) filing a counterclaim and cross-claim against residents of Jefferson County. These contentions are not persuasive because Rule 12(h), ARCP states that the defense of improper venue is waived only if neither made by motion under Rule 12 nor included in a responsive pleading.
Rogers still contends, however, that Jones v. Girard Bank, 255 Ala. 51, 50 So.2d 1 (1951), a case pre-dating adoption of the Alabama Rules of Civil Procedure in 1973, stands for the proposition that filing a counterclaim waives the defense of improper venue. That argument is untenable. After raising an objection to venue, the defendants in Jones initiated a separate action against the plaintiff in the same county. Upon consolidation of the two cases, the defendants consented to drop their earlier objection to venue. When defendants raised that defense on appeal, the court held the defense waived. The rationale of Jones simply does not apply to the case at bar. Ingram did not file a separate action nor in any manner drop his defense of improper venue.
The burden of proving that venue is improper in a county in which suit is filed is upon the party making such a claim. Medical Service Admin. v. Dickerson, Ala., 362 So.2d 906, 909 (1978). Defendant Ingram met that burden. The venue of this action should lie in Shelby County instead of Jefferson County. For this reason I must respectfully dissent.
TORBERT, C. J., and FAULKNER, J., concur.